**Richard L. RAMSAY, Trustee,**
**Plaintiff–Appellant,**

v.

**Robert A. VOGEL, Richard C. Downing, agent for Milton T. Schaeffer, Richard C. Downing, Attorney for Joe D. Whisenhunt, Joe D. Whisenhunt and Wingfield Martin, Defendants–Appellees.**

**No. 91–3592.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 17, 1992.

Decided July 22, 1992.

C. Richard Crockett, Little Rock, Ark., argued for plaintiff-appellant.

Davis M. Powell, Little Rock, Ark., argued for defendants-appellees.

Before RICHARD S. ARNOLD, Chief Judge, FRIEDMAN,* Senior Circuit Judge, and LOKEN, Circuit Judge.

DANIEL M. FRIEDMAN, Senior Circuit Judge.

Section 363(n) of the Bankruptcy Act permits a bankruptcy trustee to "avoid" a sale of the bankruptcy estate's property or to recover damages "if the sale price was controlled by an agreement among potential bidders at such sale." 11 U.S.C. § 363(n) (1988). The district court held that § 363(n) applies only to sales of property at public auction, and therefore dismissed a bankruptcy trustee's complaint alleging that certain individuals agreed to control the price at which real estate was sold in a private sale. We hold that § 363(n) covers private sales, and therefore reverse.

I.

A. Landscape Properties, Inc. filed a petition under Chapter 7 of the Bankruptcy Act in June 1988. The appellant Ramsay is the trustee in bankruptcy. After the trustee, with the approval of the bankruptcy court, sold real property of the bankrupt in a private sale, the trustee filed a complaint in the bankruptcy court against four individuals involved in the sale. The bankruptcy court certified the case to the district court after the defendants demanded a jury trial. On the defendants' motion, the United States District Court for the Eastern District of Arkansas (Reasoner, J.) dismissed the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

The allegations in the complaint, which we accept in determining whether the complaint states a claim upon which relief may be granted, *Palmer v. Tracor*, 856 F.2d 1131, 1132 (8th Cir.1988) are as follows:

In September 1988, the bankruptcy trustee entered into a contract with Robert A. Vogel for the sale of certain of the debtor's real estate to Vogel for $1,200,000. The debtor and Wingfield Martin filed objections with the bankruptcy court.

At a hearing on the objections, after the debtor withdrew its objection, Richard Downing, representing Joe D. Whisenhunt, offered $1,225,000. In light of this higher offer, the bankruptcy court declined to approve the sale, and continued the hearing to allow Vogel to submit further evidence in support of his contract with the trustee.

Prior to the reopened hearing, the trustee was notified that Martin would withdraw his objection, which he did on the day of the hearing. Downing also withdrew his $1,225,000 offer. At the reopened hearing, there was no objection to Vogel's $1,200,000 offer. Shortly after the hearing, the bankruptcy court authorized the sale to Vogel, and the parties closed the sale in early 1989. The property was conveyed to Downing, to whom Vogel had assigned his rights under the contract.

After the closing, the trustee received a copy of an agreement between Vogel and Downing, dated one day before the reopened hearing, under which Vogel agreed to assign to Downing, at Downing's option, Vogel's rights in his September purchase contract (which permitted assignment). If Downing took the assignment, he would pay Vogel $350,000; if Downing did not exercise his option, Vogel would pay Downing $350,000. Vogel's assignment of the contract was conditioned upon Downing's withdrawal of his $1,225,000 offer and the bankruptcy court's approval of the underly-

* DANIEL M. FRIEDMAN, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

ing contract between the trustee and Vogel.

B. After learning of the Vogel–Downing agreement, the trustee filed suit in the bankruptcy court against Vogel, Downing, Whisenhunt and Martin. The defendants demanded a jury trial and the bankruptcy court certified the case to the district court.

The complaint alleged that Vogel, Downing, Whisenhunt, and Martin were parties to a collusive agreement to control the sale price of bankruptcy estate property, which deprived the estate of at least $350,000, "in willful disregard of the rights of the estate and the provisions of 11 U.S.C. 363(n)." The trustee sought a determination of the fair market value of the property, compensatory damages of at least $350,000 and punitive damages of $1,000,000.

The district court dismissed the complaint. The court stated that in light of the language of § 363(n), which covers "agreement[s] among potential bidders at such sale," "[t]he issue for the Court's determination is whether the statute applies to a private sale, as opposed to a public auction, as the parties ... agree that the agreement between the defendants was clearly negotiated at a private sale."

The court held:

Clearly, the terms "bid" and "bidder" contemplate a public auction. Furthermore, the use of the phrase *"bidders at such sale,"* with the word "bidders" being plural, appears to contemplate a public gathering rather than a private sale as occurred in this case. Upon reviewing the language of the statute itself and the definitions of the terms, the Court finds the statute was intended to apply only to public auctions. As the undisputed facts in this case reveal a private sale, ... plaintiff has failed to state a claim upon which relief can be granted.

(Emphasis in original.)

## II.

1. Section 363 of the Bankruptcy Act is captioned "Use, Sale, or Lease of Property." Subsection (b)(1) provides:

The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

Bankruptcy Rule 6004(f)(1) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction."

Section 363(n) provides:

The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount. In addition to any recovery under the preceding sentence, the court may grant judgement for punitive damages in favor of the estate and against any such party that entered into such an agreement in willful disregard of this subsection.

The district court construed this provision as covering only bidders at a public auction sale. We conclude, however, that the statutory words "potential bidders at such sale" are not so limited. Rather, they cover all persons who are contemplating making an offer to purchase property of a bankrupt estate that the trustee seeks to sell, whether such sale be private or at public auction.

Under § 363(b) and the implementing bankruptcy rule, the trustee may sell property of a bankrupt estate through either a private sale or a public auction. Section 363(n) authorizes the trustee to "avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale." The sale "under this section" that the trustee may avoid is one made pursuant to the trustee's power of sale under § 363(b). Under Bankruptcy Rule 6004(f)(1) such a sale may be "by private sale or by public auction." The words in § 363(n) "bidders at such sale" cannot properly be read to limit the trustee's authority to avoid sales of a bankrupt estate's property resulting from price collu-

sion among potential purchasers of the property to situations where the collusion occurs only in connection with a public auction sale.

The injury that such collusion inflicts upon the bankrupt estate—denying it, and therefore the bankrupt's creditors, the full value of the property in the estate—is the same whether the collusion occurs in connection with a private sale or a public auction. In this case, for example, the effect of the collusion alleged in the trustee's complaint was to produce for the bankrupt estate an amount that was at least $350,000 less than the fair market value of the property. The result of the Vogel–Downing agreement was that although the property cost Downing $350,000 more than the $1,200,000 for which the trustee sold it, the additional amount went not to the bankrupt estate but to another potential purchaser of the property. Not surprisingly, at oral argument the appellees' counsel stated that if the facts regarding the Vogel–Downing agreement had been disclosed to the bankruptcy court, that court undoubtedly would not have approved the sale at $1,200,000.

The collusion among prospective purchasers that the trustee's complaint alleges is precisely the evil Congress intended to deal with in § 363(n). Both the House and Senate committee reports stated that § 363(n) "is directed at collusive bidding on property sold under this section. It permits the trustee to void a sale if the price of the sale was controlled by an agreement among potential bidders." H.R.Rep. No. 95–595, 95th Cong., 2nd Sess., at 346 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6302; S.Rep. No. 95–989, 95th Cong., 2nd Sess., at 57, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5843. There is nothing in the legislative history of § 363(n) that indicates, or even suggests, that Congress intended to limit the trustee's authority under that section to sales of the bankrupt property at public auctions. Indeed, in view of the purpose of that section, it would have been surprising if Congress had so limited it.

The district court relied heavily on the definitions in *Black's Law Dictionary* (5th Ed., West 1979) of "bidder" as:

One who makes a bid. One who offers to pay a specified price for an article offered for sale at a public auction or to perform a certain contract for a specified price,

and of "bid" as, "An offer by an intending purchaser to pay a designated price for property which is about to be sold at auction." Other dictionary definitions of those terms, however, are not that restricted. For example, one of the definitions of the verb "bid" in *Webster's Third New International Dictionary* (1966), page 212, is "to state what one will pay or take," and one of the noun "bid" is "an offer of a price (as at an auction)." Similarly, *Webster's Ninth New Collegiate Dictionary* (1990), page 148, defines the verb "bid" as "to offer (a price) whether for payment or acceptance," and the noun "bid" as "a statement of what one will give or take for something; *esp:* an offer of price." Thus, the common meaning of the word "bidder" is not limited to one who makes an offer to purchase at a public auction sale.

In other situations, the words "bid" and "bidder" commonly are used to refer to the making of an offer to buy or sell property or to provide services in a private sale or transaction. In federal government contracting, for example, persons responding to a government request for proposals are known as "bidders." The "bids" are opened at a specified time, and the person who is awarded the contract is the successful "bidder." *See, e.g., Andersen Consulting v. United States*, 959 F.2d 929 (Fed.Cir. 1992); *Lear Siegler Mgmt. Serv. Corp. v. United States*, 867 F.2d 600 (Fed.Cir.1989); *see generally* 1 Ralph C. Nash, Jr. & John Cibinic, Jr., *Federal Procurement Law*, ch. 3 (3rd ed. 1977). There is no public auction, and the transaction is a private one. Similarly, "bid-rigging," in which prospective sellers or purchasers in a private transaction agree upon the price they will offer, is a form of price-fixing that violates section 1 of the Sherman Antitrust Act. *See, e.g., United States v. MMR Corp.*, 907 F.2d 489 (5th Cir.1990); *see also City Capital Assoc.*

*Ltd. v. Interco Inc.,* 860 F.2d 60, 64 (3rd Cir.1988) (under Williams Act and its implementing regulations, a "bidder" is "the person or entity that will purchase the securities tendered").

We think Congress used the phrase "potential bidders at such sale" as a shorthand way of including all persons who might make an offer for estate property that the trustee is selling. Contrary to the district court's view that Congress's use of the plural "bidders" "appears to contemplate a public gathering rather than a private sale," the use of the plural was necessary simply because an agreement among prospective purchasers involves more than one person.

### III.

■ Although we hold that the district court's dismissal of the complaint as not stating a claim under § 363(n) cannot stand, we nevertheless affirm the dismissal of the complaint against the appellee Martin.

Section 363(n) deals with an "agreement among potential bidders" that "controls" the sales price. The only agreement that the trustee's complaint alleged involved such a collusive sale was the Vogel–Downing agreement, pursuant to which Downing undertook to pay Vogel $350,000 in return for Vogel's assigning to Downing his contractual right to purchase the property for $1,200,000. The only parties to that agreement were Vogel and Downing. The sole reference to Martin in the agreement was that Downing and Whisenhunt (for whom Downing signed the agreement as attorney) would indemnify Vogel from claims by Martin "arising out of the Vogel or Downing offers."

Moreover, although Martin initially objected before the bankruptcy court to the trustee's proposed sale to Vogel for $1,200,000 (an objection he subsequently withdrew), the complaint does not contend that Martin was a potential bidder for the property. The complaint alleges only that the Vogel–Downing agreement "contemplates the withdrawal of the Wingfield Martin objection to the $1,200,000.00 sale to Vogel," that Martin "withdrew his objection to sale in order to allow the Vogel contract to be approved in furtherance of the collusion by and between the other defendants," and that "[t]he actions by the separate defendant Wingfield Martin make him a party to the collusion."

The allegations in the complaint, as supplemented by the text of the Vogel–Downing agreement, do not state a claim against Martin under § 363(n).

### IV.

■ The trustee further contends that, in addition to the claims under § 363(n), his complaint also alleged state common law claims of civil conspiracy and fraud and that the district court erroneously denied those claims. Although the complaint does not contain separate counts for conspiracy and fraud, the trustee contends that "[t]he complaint alleged facts with specificity sufficient to apprise the Appellees of the relief sought" and that the district court erred in not addressing those allegations.

We disagree. The complaint alleges collusion among bidders at a bankruptcy sale in violation of § 363(n). There are no separate counts or even allegations of common law conspiracy or fraud. The trustee did not raise these claims at the hearing on the appellees' motion to dismiss.

Fairly read, the complaint did not allege common law claims or conspiracy or fraud. The mere presence of the words "conspired" and "collusion" in the complaint were insufficient to constitute an allegation of such common law claims. The district court cannot be faulted for failing to discuss claims that the complaint did not fairly raise and that the trustee did not discuss at the hearing. As the court stated, "I am going to make a decision whether as a matter of law section (n) covers a private sale.... I am going to look at this case very narrowly and that's just the interpretation of the statute." Even then the trustee did not allude to the alleged common law claims.

On the remand we order, the trustee may, of course, move to amend his com-

plaint as he deems appropriate, including the addition of common law claims. The decision whether to permit such amendment lies primarily within the district court's discretion. *Weimer v. Amen*, 870 F.2d 1400, 1406 (8th Cir.1989). As it now stands, however, the complaint states only a claim under § 363(n) of the Bankruptcy Act.

The order of the district court is reversed insofar as it dismissed the complaint against Vogel, Downing and Whisenhunt for failure to state a claim under § 363(n), and affirmed insofar as it dismissed the complaint against Martin. The case is remanded to the district court for further proceedings consistent with this opinion.