**LANDSCAPE PROPERTIES, INC.,**
**Debtor in Possession,**
**Appellant,**

v.

**Robert A. VOGEL, Richard C. Downing,**
**Joe D. Whisenhunt, Appellees,**

**Wingfield Martin; Milton T.**
**Schaeffer, Defendants.**

No. 94–1234.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 16, 1994.

Decided Feb. 2, 1995.

Rehearing and Suggestion for Rehearing
En Banc Denied March 28, 1995.

C. Richard Crockett, Little Rock, AR, argued, for appellant.

G. Patrick Arnoult, Memphis, TN, argued (Russell J. Hensley, on the brief) for appellee, Whisenhunt.

John C. Calhoun, North Little Rock, AR, argued (Scott E. Daniel, on the brief), for appellee Vogel.

Before BEAM, Circuit Judge,
FRIEDMAN *, Senior Circuit Judge and
LOKEN, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

Section 363(n) of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 363(n) (1988), authorizes a bankruptcy trustee to "avoid" a sale of the bankruptcy estate's property or to recover damages "if the sale price was controlled by an agreement among potential bidders at such sale." In the prior appeal in this case, we held that § 363(n) is not limited to sales at public auction, as the district court

---

* DANIEL M. FRIEDMAN, Senior Circuit Judge for the United States Court of Appeals for the    Federal Circuit, sitting by designation.

ruled, but also covered private sales. We therefore reversed the district court's dismissal of a trustee's suit seeking damages for an alleged collusive private sale of a bankrupt estate's property and remanded the case. *Ramsay v. Vogel,* 970 F.2d 471 (8th Cir.1992). On the remand, a jury held for the defendants. We uphold that verdict against various challenges, and do not disturb the district court's denial of the plaintiff's motion to amend the complaint.

## I.

A. In September, 1988, Ramsay, the Chapter 7 bankruptcy trustee of the debtor Landscape Properties, Inc. (Landscape), contracted to sell certain of Landscape's real property (the Property) to Vogel for $1,200,-000. After the bankruptcy court authorized the sale, the parties closed the transaction in early 1989, and the trustee conveyed the Property to Downing, to whom Vogel had assigned his rights under the contract.

Following the closing, the trustee learned of an earlier agreement between Vogel and Downing, under which Vogel agreed to assign to Downing Vogel's rights under the purchase agreement, and Downing agreed to pay Vogel $350,000 and to withdraw a pending offer to purchase the Property for $1,225,000 (which Downing did). The trustee then filed suit in the bankruptcy court against Vogel, Downing and others. The complaint alleged that the defendants were parties to a collusive agreement to control the sale price of bankruptcy estate property, which deprived the estate of at least $350,-000, "in willful disregard of the rights of the estate and the provisions of 11 U.S.C. 363(n)." The trustee sought a determination of the fair market value of the property, compensatory damages of at least $350,000 and punitive damages of $1,000,000.

The defendants demanded a jury trial and the bankruptcy court certified the case to the district court. The district court ** dismissed the complaint, on the ground that § 363(n) covered only sales at public auctions, and not private sales.

** Honorable Stephen M. Reasoner, United States District Judge for the Eastern District of Arkansas.

On the trustee's appeal, this court reversed. We held that the statutory words "potential bidders at such sale" are not "limited to bidding at a public auction sale" but "cover all persons who are contemplating making an offer to purchase property of a bankrupt estate that the trustee seeks to sell, whether such sale be private or at public auction." *Ramsay,* 970 F.2d at 473. We pointed out that the injury that "price collusion among potential purchasers of the property"

> inflicts upon the bankrupt estate—denying it, and therefore the bankrupt's creditors, the full value of the property in the estate—is the same whether the collusion occurs in connection with a private sale or a public auction. In this case, for example, the effect of the collusion alleged in the trustee's complaint was to produce for the bankrupt estate an amount that was at least $350,000 less than the fair market value of the property. The result of the Vogel–Downing agreement was that although the property cost Downing $350,-000 more than the $1,200,000 for which the trustee sold it, the additional amount went not to the bankrupt estate but to another potential purchaser of the property.

*Id.* at 474.

We added that "[t]he collusion among prospective purchasers that the trustee's complaint alleges is precisely the evil Congress intended to deal with in § 363(n)." *Id.*

We rejected the trustee's contention that, in addition to the charge under § 363(n), the complaint also alleged state common law claims of conspiracy and fraud, which the district court erroneously dismissed. "Fairly read, the complaint did not allege common law claims or conspiracy or fraud." *Id.* at 475. We stated, however:

> On the remand we order, the trustee may, of course, move to amend his complaint as he deems appropriate, including the addition of common law claims. The decision whether to permit such amendment lies

primarily within the district court's discretion.

*Id.* at 475–76.

B. Shortly after the mandate of this court issued, the trustee moved in the district court to file an amended and substituted complaint. The proposed complaint would have added to the original request for damages (increased in amount to $5,000,000 and described in count II as a claim seeking "recovery of the value of the property"), an additional claim seeking "Avoidance of the Sale" (proposed count I). Proposed count V was a claim for punitive damages in excess of $2,000,000. The proposed complaint also sought to add three additional parties.

The district court denied leave to file the amended and supplemental complaint. The court ruled:

> It is readily apparent from a reading of the statute that the remedies provided are in the alternative and that a party must choose which remedy to pursue. The Trustee elected the remedy of damages in the original complaint and seeks three years later to elect the alternative remedy of avoidance, admittedly to seek a better recovery in the action. However, plaintiff offers no reason why he waited three years to seek amendment to the complaint when he acknowledges that in the interim, the property was sold, leased, developed and mortgaged. Clearly the opposing parties to this action, and the parties sought to be added, would be prejudiced by the late amendment. Under the circumstances of this case, justice does not require leave of court to allow for the amendment.

Shortly before trial, Landscape converted its Chapter 7 liquidating bankruptcy to a Chapter 11 reorganization proceeding, and on the trustee's motion the court substituted Landscape as debtor in possession for the trustee as the plaintiff. No party questions the authority of Landscape to continue to prosecute the action that the trustee began. *Cf. Minnesota Mining & Mfg. Co. v. Eco Chem. Inc.*, 757 F.2d 1256, 1261–65 (Fed.Cir. 1985). (Stating that if a party is substituted pursuant to F.R.C.P. 25(c), "[t]he merits of the case, and the disposition of the property, are still determined vis-a-vis the originally named parties").

After trial, the jury found for the defendants and the district court dismissed the complaint.

C. Viewing the evidence most favorably to and drawing all reasonable inferences in favor of the verdict, *Finley v. Empire Gas, Inc.*, 975 F.2d 467, 474 (8th Cir.1992), the jury could have found the following facts:

In its bankruptcy schedules filed in July 1988, sworn to by Landscape's vice president and secretary, the Property was valued at $1,200,000. In July 1988, the month after the bankruptcy petition was filed, James Hathaway offered the trustee $1,000,000 for the Property. The trustee made a counter offer of $1.2 million. Over the next few weeks the trustee solicited offers from others. Hathaway then made another offer to buy all of Landscape's properties for $1,300,316, of which $960,000 was for the Property. At about the same time Downing, on behalf of Whisenhunt, offered $900,000 for all of Landscape's properties.

In the middle of August, the trustee received from Vogel an offer to buy the Property for $1.1 million. After talking with other prospective purchasers, the trustee met with the two owners of Landscape and discussed the price at which the Property should be sold. The owners had rejected Hathaway's $1,000,000 offer because they wanted $1.2 million, and they authorized a counter offer to Vogel at $1.2 million, which the trustee made.

Vogel counter-offered to pay $1.15 million. The owners rejected that offer and the trustee redrafted the contract at $1.2 million. Vogel accepted and signed the contract on September 1, 1988.

The trustee then gave notice through the bankruptcy court of his intention to sell to Vogel at that price. Landscape and Martin filed objections with the bankruptcy court. At the hearing on those objections, after Landscape withdrew its objection, Downing, representing Whisenhunt, offered $1,225,000. In light of this higher offer, the bankruptcy court declined to approve the sale, and subsequently continued the hearing to allow Vogel

to submit further evidence in support of his contract with the trustee.

Prior to the reopened hearing, the trustee was notified that Martin would withdraw his objection, which he did on the day of the hearing. Downing also withdrew his $1,225,-000 offer. At the reopened hearing, there was no objection to Vogel's $1,200,000 offer. Shortly after the hearing, the bankruptcy court authorized the sale to Vogel.

The November 3, 1988 agreement under which Vogel assigned his interest under the contract to Downing for $350,000 and agreed to withdraw his offer $1,225,000, and Downing agreed to pay Vogel $350,000, was dated the day before the reopened hearing in the bankruptcy court. Prior to that agreement and in reliance upon the September 1 signed purchase and sale agreement, Vogel, a real estate developer, had hired an architect, negotiated with a prospective tenant, developed plans and drawings for a shopping center, and received a letter of intent from Safeway to lease a store there.

Part of the money paid at the closing was, with the approval of the bankruptcy court, used to pay the first mortgage on the Property of $497,301. The bankruptcy court subsequently approved, over Vogel's objection, the trustee's request to use the balance of the $1,200,000 purchase price to pay general creditors, the Internal Revenue Service, and legal expenses, and to disperse to the two owners of Landscape $75,000 each. After the trustee made those payments, slightly more than $280,000 remained in the estate.

## II.

Two fallacious contentions underlie Landscape's arguments.

■ A. Landscape states that our prior decision is the law of the case that "the effect of the collusion alleged in the trustee's complaint was to produce for the bankrupt estate an amount that was at least $350,000 less than the fair market value of the property ... Arguably, the law of the case is that the value exceeded the sale price by $350,-000.00." Our prior decision, however, intimated no views on the merits of the trustee's claim.

The only issue there before us, and the only one we decided, was whether the district court had erroneously dismissed the complaint as not stating a claim under § 363(n) because that section covered only public auction sales. We stated that "in determining whether the complaint states a claim upon which relief may be granted" we accept "[t]he allegations in the complaint." *Ramsay*, 970 F.2d at 472. The statements in our opinion to which Landscape refers all were based on the allegations of the complaint and were intended to show that, if the trustee could prove those allegations, he would have established the kind of misconduct that § 363(n) was intended to cover.

The case is now in an entirely different posture. After we held that the complaint stated a valid claim under § 363(n), the case was tried to a jury, which found that Landscape was not entitled to recover. The question now is whether the evidence supports that ruling—and we hold in part VI that it does—and nothing said in our prior opinion casts any doubt on that conclusion.

■ B. Landscape repeatedly states in its brief that this case involves fraud on the bankruptcy court. The alleged fraud was the failure to disclose to the court, at the second hearing on the proposed sale of the Property to Vogel for $1,200,000, the November 3, 1988 agreement under which Vogel assigned his interest in the contract to Downing for $350,000 and the latter agreed to withdraw his $1,225,000 offer. At that hearing the court asked the trustee:

Is it your feeling or can you state for the record that you are aware of no collusion between the parties?

The trustee replied:

I am aware of no collusion. I asked Mr. Downing that specific question and Mr. Davidson [an attorney representing Vogel at the hearing] can probably respond to the Court's question as well, although I have not talked to him, but I am aware of none.

The court then asked the other counsel present (except Davidson) about collusion. They stated that they did not know of any.

At that time the trustee was not aware of the November 3 agreement. It was only after he found out about it later that he filed the present suit.

The original complaint did not allege fraud on the court. Although paragraph 38 of the proposed amended and substituted complaint did so allege, the district court denied leave to file that complaint—a ruling we do not disturb, see part III below—and that allegation therefore is not part of this case. Moreover, the two substantive counts of the amended and supplemental complaint charged violation only of § 363(n), and there was no count based upon fraud on the court. Although count III, which sought an accounting from Whisenhunt, alleged that he "obtained the property by fraud", this appears to refer to "fraud on the Trustee" (which also was alleged in paragraph 38) rather than fraud on the court.

"Fraud on the court, though not easily defined, can be characterized as a scheme to interfere with the judicial machinery performing the task of impartial adjudication, as by preventing the opposing party from fairly presenting his case or defense. A finding of fraud on the court is justified only by the most egregious misconduct directed to the court itself, such as bribery of a judge or jury or fabrication of evidence by counsel, and must be supported by clear, unequivocal and convincing evidence." *Pfizer Inc. v. International Rectifier Corp. (In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions)*, 538 F.2d 180, 195 (8th Cir. 1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977) (citations omitted); *see also Nichols v. Klein Tools, Inc.*, 949 F.2d 1047, 1048 (8th Cir.1991) (quoting *Pfizer* ). Landscape's claim of fraud on the court does not even come close to meeting that standard.

Counsel neither made affirmative misrepresentations to the court nor fabricated evidence. Appellant does not contest that each lawyer who was asked by the bankruptcy court whether he was aware of any "collusion" between the parties truthfully denied knowledge. Davidson said nothing, but he was not asked the question.

Davidson, an experienced bankruptcy practitioner, who represented Vogel in the bankruptcy aspects of this matter, testified that he had advised Vogel that "the transaction that he was doing with Mr. Whisenhunt was a legal transaction, that he had a contract, he had a right of assignment in the contract, and that this transaction was okay." He testified that he heard the bankruptcy judge's question to the trustee about collusion, and answered "No" to the question "did you perceive at that time that that question had anything to do with you or Mr. Vogel or any conduct by either one of you?" Davidson's failure to volunteer an answer to a question he was not asked and which he believed was irrelevant to any conduct by himself or his client cannot, under any theory, be viewed as fraud on the court.

Here, as in *Pfizer Inc.*, "[w]e have reviewed the record of proceedings in the District Court and we believe the conduct of the accused individuals did not evidence a scheme to improperly influence or impair the court's function, and was not egregious misconduct characterizable as fraud on the court." *Id.* The conduct in this case is a far cry from the conduct that was held to constitute fraud on the court in the case Landscape primarily relies on, *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 245–46, 64 S.Ct. 997, 1001, 88 L.Ed. 1250 (1944). In *Pfizer* this court described the fraud in *Hazel–Atlas* as a "scheme by patentee to defraud the court by relying upon an article supposedly written by a disinterested author, but actually written and published by patentee." *Id.*

Indeed, apart from its pejorative character, the claim of fraud on the court adds nothing analytically to the basic claim under § 363(n). For in virtually every case in which a trustee files suit under that provision to challenge the sale of a bankrupt estate's property, the trustee will have been unaware of the alleged agreement to control the price of the property when he sought and obtained the bankruptcy court's approval of the sale. It is § 363(n), and not any alleged fraud on the court, which determines whether the sale was improper.

### III.

■ Landscape contends that the district court erroneously refused to permit the trustee to amend his complaint to supplement the claim for damages with an additional claim for avoidance of the sale. We need not reach that question, however, because the jury's verdict in favor of the defendants, which we uphold in part VI, makes that issue moot.

The court instructed the jury that to prevail on its claim for damages, Landscape was required to prove "each of three essential propositions:"

First, that the Defendants were potential bidders at a sale conducted by the Plaintiff;

Second, that the $1,200,000.00 sales price of the property was controlled by an agreement between the Defendants;

Third, that the value of the property at the time of the approval of the sale by the Court on November 18, 1988, exceed[ed] the purchase price of $1,200,000.00 established in the contract between the Plaintiff and Defendant Robert Vogel.

The court further instructed the jury that: The Defendants have raised the affirmative defenses of waiver and estoppel. Those defenses are based on Plaintiff's own conduct. To the extent the Defendants proved either of them by a preponderance of the evidence, the Defendants would not be liable for any conduct to which the defense applies. The basis for these defenses of waiver and estoppel is that Plaintiff cannot now complain of conduct of which it approved at the time, or of which it was aware, but against which it took no action to protect itself.

Finally, the court instructed:

If you decide for the Plaintiff on the question of liability, you must then fix the amount of money by which the fair market value of the property at the time the sale was approved by the Bankruptcy Court on November 18, 1988 exceeded the sale price of $1,200,000.00.

Whether any such excess in value has been proved by the evidence is for you to determine.

When the jury found for the defendants Vogel and Whisenhunt, it necessarily found either that they were not "potential bidders at a sale conducted by" Landscape (which is unlikely in light of the uncontradicted evidence that both had submitted bids for the property), or that the $1,200,000.00 sales price was not "controlled by an agreement between" them, or that the value of the property on November 18, 1988, did not exceed $1,200,000, or that Landscape was barred from recovery by waiver or estoppel. The jury therefore was not required to determine the amount by which the fair market price of the property exceeded $1,200,000.00.

Since the jury thus decided against, and not "for the Plaintiff on the question of liability," any question regarding the kind or scope of relief to which the plaintiff would have been entitled had it prevailed on the merits is moot. In light of the jury verdict, there no longer was any question whether, if the defendants had been found liable, the plaintiff would have been entitled to avoid the sale instead of recovering damages. Landscape was not prejudiced by the district court's refusal to permit amendment of the complaint to raise the avoidance claim.

### IV.

■ Landscape argues that the district court erred in submitting the case to a jury. According to Landscape, the district court should have remanded the case to the bankruptcy court for a bench trial before that court.

After the trustee filed his complaint in the bankruptcy court, the defendants moved for a jury trial. The bankruptcy court ruled that "a bonafide jury trial issue exists" and, because of the decision of this court in *In re United Missouri Bank,* 901 F.2d 1449 (8th Cir.1990) (discussed below), that "bankruptcy courts lack the statutory authority to conduct jury trials," certified the case to the district court "for determination and if appropriate, trial on the merits before a jury."

At the pretrial hearing before the district court Mr. Brown, counsel for Landscape, ap-

parently acquiesced in a jury trial. He stated:

> MR. BROWN: If I may? That is a serious issue, because the right to trial by jury—this is strictly a statutory cause of action under 363(n). The right to trial by jury is really kind of iffy. We went along with it just because it seemed like if we do a jury, we don't have error, and if we don't do one, we might have error.

In other words, to avoid any issue of possible error if there were a bench trial, Landscape "went along with" the jury trial. Such acquiescence must be deemed a waiver of any objection to the jury trial.

█ In any event, the district court properly held a jury trial.

In *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the Supreme Court held that a person sued by a bankruptcy trustee to recover an allegedly fraudulent money transfer had a Seventh Amendment right to a jury trial. The Court therefore reversed a bankruptcy court's award of damages in a bench trial.

The Court stated that "[t]he Seventh Amendment protects a litigant's right to a jury trial only if a cause of action is legal in nature and it involves a matter of 'private right.'" *Id.* at 42, n. 4, 109 S.Ct. at 2790, n. 4. It also stated that "[u]nless a legal cause of action involves public rights, Congress may not deprive parties litigating over such a right of the Seventh Amendment's guarantee to a jury trial." *Id.* at 53, 109 S.Ct. at 2796. It held that "a bankruptcy trustee's right to recover a fraudulent conveyance under 11 U.S.C. § 548(a)(2) seems to us more accurately characterized as a private rather than a public right as we have used those terms in our Article III decisions." *Id.* at 55, 109 S.Ct. at 2797.

In *United Missouri Bank,* a bankruptcy trustee sued in the bankruptcy court to recover from the bank allegedly preferential transfers the bank had received from the bankrupt. The bankruptcy court held that the bank was entitled to a jury trial, which it could conduct. Although we held that the bankruptcy court had no statutory authority to conduct jury trials, "[w]e agree[d] with the

bankruptcy judge that the Bank has a constitutional right to a jury trial under *Granfinanciera.*" *United Mo. Bank,* 901 F.2d at 1450, n. 5; *see also id.* at 1455 ("*Granfinanciera,* however, requires that a jury trial be provided in this case.") Although we disagreed with the holding in *In re Ben Cooper, Inc.,* 896 F.2d 1394 (2d Cir.), *vacated on other grounds,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990) *reinstated,* 924 F.2d 36 (2nd Cir.), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991), that a bankruptcy court may conduct a jury trial, we did not disagree with the other holding in that case that in a suit by the trustee against an insurance company and two insurance brokers to recover damages from a fire at the bankrupt's plant, the defendants were entitled to a jury trial because their claims were "inherently legal" rather than equitable. *Id.* at 1402.

The reasoning of those cases warrants the conclusion that Landscape's claim for damages under § 363(n) is inherently legal and involves private rights. Congress has not indicated in that section whether claims thereunder should have jury trials. Nothing there suggests, however, that Congress did not intend a jury trial where the claim was for damages equal to, in the words of the statute, the "amount by which the value of the property sold exceeds the price at which such sale was consummated."

The only claim before the district court was for damages. Although the cause of action for damages that § 363(n) created and gave to the trustee may not have been known at common law, it is similar or comparable to the damage claims for recovery of preferential treatment involved in the cases previously discussed. In all those cases, as in the present one, the suit was to recover for the bankrupt estate monies received by third parties to which the bankrupt estate allegedly was entitled. The claim in this case therefore is inherently legal rather than equitable, and involves what are traditionally viewed as private rather than public rights. The district court properly held a jury trial on this claim for damages under § 363(n).

## V.

Landscape alleges that the district court committed seven errors in its charge to the jury, both by giving allegedly erroneous instructions and failing to give certain of Landscape's proposed instructions.

"The trial court has broad discretion to instruct the jury in the form and language it considers a fair and adequate presentation of substantive law. This court reviews jury instructions to determine whether, taken as a whole, they are confusing or misleading in presenting the principles of law applicable to the case." *Grogan v. Garner,* 806 F.2d 829, 836 (8th Cir.1986) (citation omitted). We are satisfied that, taken as a whole, the instructions clearly and properly explained to the jury the legal principles governing the case. In any event, any possible error in misstating the law was not "so egregious, considering the instructions as a whole, as to require the verdict to be set aside." *Naylor v. St. Louis S. Ry.,* 847 F.2d 1305, 1306 (8th Cir.1988) (quoting *Jamesbury Corp. v. Litton Indus. Prod., Inc.,* 756 F.2d 1556, 1560 (Fed.Cir. 1985)).

These contentions do not require extensive discussion.

■ 1. Landscape first contends that the instruction stating the three elements that it was required to prove, set forth in part III above, was erroneous because (a) our prior decision established that the November 3, 1988 agreement between Vogel and Downing controlled the sales price of the property and (b) the instruction used an improper date for determining the value of the property. As we have held, however, our prior decision did not so decide (see part II A above). Furthermore, in view of the jury's finding that the defendants were not liable, any issue concerning the date for valuing the property (which related primarily to damages, not liability) is harmless.

■ 2. The instruction that the contract of sale between the trustee and Vogel was assignable, correctly stated Arkansas law. The instruction also told the jury that that contract was "subject to the conditions of approval by the Bankruptcy Court." Landscape's proposed instruction on this subject was unnecessary and confusing, and erroneously stated that an agreement between the trustee and a purchaser is "merely an offer" and does not "become a binding contract until it is approved by the Bankruptcy Court."

■ 3. Landscape has not shown that the district court's waiver and estoppel instructions were erroneous. We know of no authority to support Landscape's contention that these defenses are not available in a suit under § 363(n). The two cases Landscape cites do not support its argument. *Gumport v. China Int'l. Trust & Inv. Co. (In re Intermagnetics Am., Inc.),* 926 F.2d 912 (9th Cir. 1991), held that a bankruptcy court's order approving a sale of a bankrupt's property did not bar a subsequent suit by the trustee under § 363(n) to avoid the sale on the ground that the bankruptcy court's approval of it was based on false representations. *Robertson v. Isomedic, Inc. (In re Int'l Nutronics, Inc.),* 3 F.3d 306 (9th Cir.1993), held that a trustee's suit under § 363(n) was barred because it was not filed within one year of the bankruptcy court's order approving the sale, the period under Rule 60(b) of the F.R.C.P. for setting aside a judgment for misconduct.

■ 4. The district court correctly charged the jury that Landscape was bound by the trustee's actions. Indeed, at the hearing to substitute Landscape for the trustee as the plaintiff, Landscape conceded that it was so bound. When the court indicated that it would grant the substitution and stated that if the issue arose it would tell the jury that "the Plaintiff is bound by any actions or inactions of the trustee," Mr. Brown, Landscape's counsel, replied "[t]hat's correct, and we've tendered an instruction along that line." The following colloquy then occurred:

> THE COURT: From the very beginning the Defendants can tell the jury that in opening statement and there won't be any issue that comes up that questions that in any regard, as far as what we do in front of the jury and the instructions that we give the jury.

> MR. BROWN: That's correct.

5. The district court correctly refused to give Landscape's proposed instruction that the November 3rd agreement was "precisely the evil congress intended to deal with in subsection 363(n)." That instruction would have been tantamount to directing a verdict.

6. The instruction regarding the defendants' reliance on advice of counsel related only to the claim for punitive damages. The instruction explained that the defendants were relying on advice of counsel to show "they are not guilty of willful or deliberate wrongdoing," which the court previously had told the jury was a prerequisite to the award of punitive damages. In view of the jury's verdict, the claim for punitive damages is no longer an issue in the case.

7. Landscape's proposed instruction on ignorance of the law also related to the claim for punitive damages, and the jury verdict makes that refusal moot.

## VI.

Finally, Landscape challenges the sufficiency of the evidence to support the jury verdict. The argument takes two forms: First, Landscape argues that the district court should have directed a verdict in its favor. Second, it asserts that the record cannot sustain the verdict.

Both formulations rest in large part on the contention, which we have rejected, that our prior decision established that the November 3 agreement between Vogel and Downing controlled the sale price of the Property.

The principal factual issue the jury had to resolve was, in the language of the instruction, whether "the $1,200,000 sales price of the property was controlled by an agreement between the Defendants." Substantial evidence supports a jury verdict that it was not so controlled.

When the bankruptcy proceeding was begun, the debtor valued the Property at $1,200,000. The first offer made to the trustee was for $1,000,000; the trustee counteroffered to sell for $1,200,000. The trustee solicited other offers, and received two, both for less than the first offer. Finally, Vogel offered the trustee $1,100,000. The owners of Landscape rejected that offer because they wanted $1,200,000, and Vogel ultimately signed the September 1, 1988 contract to purchase the Property at that price.

The $1,200,000 sales price was the amount that the owners of the business believed was the value of the Property and which they wanted to obtain for it. It provided enough to pay all the secured and unsecured creditors and to permit a substantial distribution to the owners.

This evidence provided an adequate basis for the jury to conclude that the sales price of the Property was controlled by the September 1, 1988 contract between Vogel and the trustee and not by the subsequent November 3 agreement between Vogel and Downing. Since the September 1 contract that set the price was between Vogel and the trustee, the jury properly could have concluded that the sales price "had not been controlled by an agreement between the Defendants."

Vogel testified that the $350,000 payment to Downing (who represented Whisenhunt) under the November 3 agreement reflected

> that we're two businessmen who are functioning as businessmen who have a common interest to sit down and talk, to work out an arrangement that is done every day in business. We're not lawyers, we're not bankrupt people. We are opportunity people in building shopping centers, doing developments. We both had an idea of what we were going to do, and Mr. Whisenhunt and I in a friendly manner resolved a financial arrangement that we do in business, in our type of business every day, that we do development. I mean, it's business.

In denying Landscape's motion for a directed verdict, the district court correctly recognized that there was sufficient evidence to permit the jury to conclude that the November 3 contract did not control the sales price of the Property:

> Oh, I disagree with you. I think there's a lot of proof in the case that the agreement between Mr. Vogel and Mr. Whisenhunt had to do with the purchase of the contract

right, for the assignment of that right, for getting—either getting rid of the other, and for the loss of business opportunity, and did not represent a sum of money that would otherwise have gone into the hands of the trustee.

## CONCLUSION

The judgement of the district court is affirmed.