## In re HOFFINGER INDUSTRIES, INC., Debtor.

### Leesa Bunch and McMasker Enterprises, Inc., Plaintiffs,

v.

### J.M. Capital Finance, Ltd. and Arrowhead Insurance Co., Defendants.

Bankruptcy No. 2:01–BK–20514.
Adversary No. 04–AP–1302.

United States Bankruptcy Court,
E.D. Arkansas,
Helena Division.

April 6, 2005.

Stephen L. Gershner, Matthew D. Wells, Little Rock, AR, for J.M. Capital and Arrowhead Insurance.

James E. Smith, Whitney Davis, for Leesa Bunch and McMasker Enterprises.

Charles Tucker, Assistant U.S. Trustee.

## ORDER

RICHARD TAYLOR, Bankruptcy Judge.

Before the Court is a Motion to Reconsider Order [Motion] filed by J.M. Capital Finance Co., Ltd. [J.M. Capital]. J.M. Capital again raises the issue of res judicata and asks that the Court reconsider its March 4, 2005, order denying J.M. Capital's motion for summary judgment [Order]. For the reasons stated in the Order and below, the Motion is denied.

### Res Judicata

■ In the Order, this Court interpreted the time restrictions contained in the Final Order Authorizing Debtor to Use Cash Collateral and Obtain Post–Petition Secured Credit [Cash Collateral Order] as encompassing solely the debtor's causes of action. Accordingly, the Cash Collateral Order would not be restrictive as to causes of action that might be enjoyed by other parties in interest, including Leesa Bunch [Bunch]. J.M. Capital urges the Court to give full credence to the "any other objections to the claims or liens of JM [Capital], whether pre-petition or post-petition" clause found in the financing agreement between J.M. Capital, the debtor, and CMA Corporation. In order to do so, the Court must view this language in its proper context.

Attached to the Cash Collateral Order, and incorporated by reference therein, is an Agreement for Post–Petition Financing and For Use of Cash Collateral [Agreement] between the debtor, J.M. Capital, and CMA Corporation. The section pertinent to J.M. Capital's argument provides as follows:

3.15   Waiver. Except as set forth below

Borrower [1] waives and affirmatively agrees not to allege or otherwise pursue against JM or CMA any or all defenses, affirmative defenses, counterclaims, claims, causes of action, set-off or other rights that they may have, as of the date hereof, claims arising under § 506, 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code, to contest the pre-petition events of default declared by JM or any provisions of the pre-petition loan agreements between JM and the Debtor or this Agreement, the right of Lender or JM to rents, issues, profits, and proceeds from the Collateral, the security interest of Lender or JM in any property (whether real or personal, tangible or intangible), right of other interest, now or hereafter arising in connection with the Collateral, the conduct of Lender in administering the Financial Agreements. The waiver contained in this Section shall apply to Borrower in its capacity as Borrower, and in any other capacity. Notwithstanding the foregoing, the Debtor shall have until the 90th day after the entry of the final order granting the Motion and approving the use of cash collateral pursuant to this Agreement to assert or otherwise pursue any and all defenses, affirmative defenses, counterclaims, claims, causes of action, rights of set-off the Debtor may have against JM or any other objections to the claims or liens of JM whether pre-petition or post-petition, including, but not limited to, any claims or rights under sections 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code (the "JM Causes of Action"). In the event the Debtor fails to assert or otherwise pursue the JM Causes of Action with the aforesaid 90–day period, the Creditor's Committee or other party in interest may assert or otherwise pursue the JM Causes of Action within one hundred twenty (120) days following the entry of the final order of the United States Bankruptcy Court granting the Motion and approving the use of cash collateral pursuant to this Agreement.

The meaning of the above is plain. The debtor, and only the debtor, is waiving its claims, causes of action, and defenses. Commensurately, "notwithstanding the foregoing," the debtor retained a 90 day window within which it could pursue any appropriate action against J.M. Capital. The above language defines the rights retained specifically and generally through the "any other objections to the claims or liens of JM" language. Both the specifically and generally described rights thus retained are then collectively defined as the "JM Causes of Action."

As stated in this Court's previous Order, cash collateral hearings are often plenary hearings with the main driving concern being the debtor's survivability. The financing creditor usually has substantial leverage and often insists that the debtor waive defenses or claims based upon the debtor's need to continue the financing relationship. A look back period, in this instance 90 days, is generally inserted as a result of an agreement between the parties or at the court's insistence. The purpose is to ameliorate the potential adverse consequences of the debtor's agreement to waive defenses at a moment of greatest adhesion. Upon the debtor's failure to pursue these rights, which it might forego given its desire to continue the financing relationship, creditors or other interested parties are often afforded an opportunity to raise the debtor's defenses or claims.

---

**1.** "Borrower" is defined in the Agreement as both the debtor as a corporation and as the debtor-in-possession.

Here, a time period was afforded other parties, none of whom had waived any claims or defenses they might have or have had against J.M. Capital. The debtor waived its claims and defenses, reserved its right to assert them for a limited period, and upon its failure to so act, granted other parties the right to do so within a specific time period. During that additional 30 day time period, other parties could raise or assert the debtor's claims or defenses. Thus, other creditors had the right to carry the debtor's burden given the debtor's reluctance or unwillingness to do so. This opportunity of bringing causes of action unique to the debtor is a right that other parties typically do not enjoy. Creditors are given this right in a cash collateral order because the debtor might not want to pursue advantageous causes of action against the party from whom it needs financing.

Only a trial on the merits will determine if the prevailing cause or causes of action raised by Bunch in the current litigation are, in fact, solely the debtor's claims or defenses. Taken at face value, Bunch's Corrected and Substituted Complaint For Reconsideration of Claims For Cause, Reclassification of Claims and Avoidance of Liens or, in the Alternative, For Equitable Subordination of Claims and Liens [Complaint] does not reflect that such is the case, especially on summary judgment.

**Fraud on the Court**

■ There is no doubt that fraud on the court is an extremely serious matter. The serious consequences have justified a judicial history of properly and consistently restricting its scope. In the Eighth Circuit, " '[a] finding of fraud on the court is justified only by the most egregious misconduct directed to the court itself, such as bribery of a judge or jury or fabrication of evidence by counsel ....' " *Landscape Props., Inc. v. Vogel,* 46 F.3d 1416, 1422 (8th Cir.1995) (quoting *Pfizer v. International Rectifier Corp. (In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions),* 538 F.2d 180, 195 (8th Cir. 1976)). As recently stated by the Eighth Circuit Bankruptcy Appellate Panel,

[f]raud on the court is "characterized as a scheme to interfere with the judicial machinery performing the task of impartial adjudication, as by preventing the opposing party from fairly presenting his case or defense." *Landscape Properties, Inc. v. Vogel,* 46 F.3d 1416, 1422 (8th Cir.1995). A finding of fraud on the court is justified only in the most egregious misconduct directed to the court itself. *Greiner v. City of Champlin,* 152 F.3d 787, 789 (8th Cir.1998). The standard for fraud on the court is distinct from the mere general fraud standard of Rule 60(b)(3). *Id.*

The Ninth Circuit has defined fraud on the court as a species of fraud that "defiles the court itself ... so that the judicial machinery cannot perform in the usual manner." The court goes on to say that fraud, without more, should have redress under a motion pursuant to Rule 60(b)(3). *Toscano v. I.R.S,* 441 F.2d 930, 933 (9th Cir.1971).

*Woodcock v. U.S. Dep't of Educ. (In re Woodcock),* —— B.R. ——, ——, No. 04–6079WM, 2005 WL 638157, at *5 (8th Cir. BAP Mar. 21, 2005).

■ J.M. Capital suggests this high standard requires that the Complaint should be dismissed on summary judgment. J.M. Capital's request is denied for the reasons outlined in this Court's original Order and for the two reasons set forth below.

First, J.M. Capital has not produced any meaningful facts controverting the Complaint as would be appropriate in a motion for summary judgment. It simply argues

that the allegations in the Complaint do not rise to the level of fraud on the court.

Second, J.M. Capital's dismissive view of the Complaint ignores the seriousness of the allegations contained therein. If true, which this Court must accept for purposes of summary judgment in the light of no controverting affidavits or factual assertions, the Complaint could very well lay out a basis for a finding of fraud on the Court. More specifically, Bunch is entitled to demonstrate if, in fact, false statements were made directly to the Court and evidence, in the form of supporting documentation, was wholly manufactured for the purpose of specifically misleading this Court at a cash collateral hearing.

As has been stated, cash collateral hearings are plenary hearings with the main emphasis being upon the debtor's survivability and its concomitant need to use cash collateral. These hearings occur almost immediately after the case is filed and before the parties have had a full opportunity to conduct discovery or otherwise investigate the debtor's financial history. Usually, it is uncontroverted that the indebtedness involved has been incurred. It is typical to preserve issues related to incidents of the credit relationship, as contemplated in the Cash Collateral Order, not the very existence of the debt itself. It would indeed be a serious matter if the evidence showed that the indebtedness involved does not even exist, the supporting documents are manufactured, and that fact is known to the debtor, the lender, and, perhaps, their respective counsel. Bunch is certainly entitled to conduct discovery and bring to the Court's attention egregious misconduct or a deliberate and planned scheme directed and intended to defraud the Court itself.

Federal Rule of Bankruptcy Procedure 9024, which incorporates Federal Rule of Civil Procedure 60, is very clear: "This rules does not limit the power of the court to entertain an independent action to relieve a party from a judgment, order, or proceeding, ... or set aside a judgment for fraud upon the court." There is no requirement that the Court initiate the action. In this instance, the Court entertains the independent action filed by Bunch which, if true, may form the basis for a finding of fraud upon the Court. Bunch is neither a participant in the alleged fraud or its initial victim. Bunch has had to investigate and deconstruct the alleged fraudulent activity. Accordingly, this Court takes a more liberal approach to Bunch's allegations concerning fraud in bringing this action. *See Bell v. Collins (In re Collins)*, 137 B.R. 754, 756 (Bankr. E.D.Ark.1992) (liberality is justified when third party outsider must plead fraud on second hand knowledge); *Davidson v. Bank of New England (In re Hollis and Co.)*, 86 B.R. 152, 156 (Bankr.E.D.Ark. 1988) (same).

For the reasons stated above and in its original Order, J.M. Capital's Motion to Reconsider Order is denied.

IT IS SO ORDERED.