**Martha POE, Appellant,**

**v.**

**JOHN DEERE COMPANY, Appellee.**

**Nos. 81–2273, 82–1135.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 11, 1982.

Decided Dec. 17, 1982.

Daniel M. Dibble, Karen M. Iverson, Lathrop, Koontz, Righter, Clagett & Norquist, Kansas City, Mo., for appellee John Deere Co.

William H. Pickett, William H. Pickett, P.C., Kansas City, Mo., for appellant.

Before BRIGHT and ARNOLD, Circuit Judges, and MEREDITH,* Senior District Judge.

ARNOLD, Circuit Judge.

Martha Poe appeals the District Court's[1] decisions to affirm an award of costs to defendant in *Poe v. John Deere Co.*, No. 78–0578–CV–W–5 (W.D.Mo. Dec. 14, 1981), and to grant defendant's motion for summary judgment in *Poe v. John Deere Co.*, No. 81–0365–CV–W–5 (W.D.Mo. Oct. 21, 1981) because the suit was barred by res judicata. She contends that the award of costs was improper because the court did not have the power to tax costs against the plaintiff, and in the alternative that there was an abuse of discretion. She alleges that res judicata does not bar her other suit because: a) a claimant who fails to win on one theory may relitigate her claim on a second theory not raised before; b) she raises two separate and distinct causes of action; and c) the causes of action she raises in her second action could not have been raised before. We affirm.

---

* The Hon. James H. Meredith, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Hon. Scott O. Wright, United States District Judge for the Western District of Missouri.

On August 7, 1978, Ms. Poe filed suit (*"Poe I"*) in the District Court alleging that John Deere had discriminated against her on the basis of her race and in retaliation for opposing John Deere's employment practices, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5, and the Civil Rights Act of 1866, 42 U.S.C. § 1981. The Court granted John Deere summary judgment on the Title VII claim on February 27, 1980.[2] Trial on the § 1981 claim began on April 27, 1981.

On April 27, 1981, after the jury in *Poe I* was sworn but before any evidence was presented, Ms. Poe moved for leave to amend her complaint. She wanted to include claims for actual and punitive damages under the theories of "prima facie tort,"[3] violation of the Missouri Service Letter Statute, invasion of privacy, injurious falsehood, and intentional infliction of emotional distress. The motion was denied. The jury found in favor of John Deere; the judgment entered on the verdict was not appealed. On October 29, 1981, the Clerk of the District Court entered an order settling costs. The total costs taxed in favor of John Deere amounted to $1,384.91. The Court subsequently denied plaintiff's motion to review the order.

Ms. Poe filed another suit against John Deere (*"Poe II"*) in the Circuit Court of Jackson County, Missouri, on April 27, 1981, the same day the trial of *Poe I* began. She sought the same relief and raised the same theories she had attempted to assert in her amended complaint in *Poe I*. John Deere removed the case to the District Court because of diversity of citizenship. The District Court granted John Deere's motion for summary judgment on res judicata grounds.

I.

*Res Judicata*

■ Federal law governs the issue of res judicata. *Poe II* is in a federal court because it is a diversity case, but the question presented is the effect of the judgment rendered, in *Poe I*, by a federal court on a claim arising under federal law, 42 U.S.C. § 1981. Even if *Poe II* had not been removed from the state court, federal law would still have governed this question. See *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *Roach v. Teamsters Local Union No. 688*, 595 F.2d 446 (8th Cir.1979); Vestal, *Res Judicata/Preclusion by Judgment: The Law Applied in Federal Courts*, 66 Mich.L.Rev. 1723, 1739–40, 1746 (1968).

■ Plaintiff's contention that *Poe II* raises theories of recovery not presented in *Poe I* does not enable her to escape the effects of res judicata. Final judgment on the merits precludes the relitigation of a claim on any grounds raised before or on any grounds which could have been raised in the prior action. *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981); *Cromwell v. County of Sac*, 94 U.S. 351, 353, 24 L.Ed. 195 (1877). Having failed to recover on one theory of recovery, a litigant cannot attempt to relitigate the same claim under a different theory of recovery. *United States v. Stuart*, 689 F.2d 759, 761 (8th Cir.1982); *Roach v. Teamsters Local Union No. 688, supra*, 595 F.2d at 450; *Robbins v. District Court of Worth County, Iowa*, 592 F.2d 1015, 1018 (8th Cir.), *cert. denied*, 444 U.S. 852, 100 S.Ct. 107, 62 L.Ed.2d 69 (1979).[4]

Plaintiff argues that *Poe I* and *II* raise two separate and distinct claims and that *Poe I* should therefore not be given res

---

**2.** Ms. Poe failed to comply with Title VII's requirement that she file suit within ninety days of receiving her notice of a right to sue. 42 U.S.C. Sec. 2000e–5(f)(1). The dismissal of her Title VII claim is not in issue on this appeal.

**3.** This term, in Missouri law, seems to include any act intentionally inflicting harm, but not within any traditional tort category.

**4.** Restatement (Second) of Judgments Sec. 25 (1982) provides that res judicata applies "even though the plaintiff is prepared in the second action (1) To present evidence or grounds or theories of the case not presented in the first action . . . ."

judicata effect. The parameters of a "claim" cannot be stated with mathematical precision. For the purpose of determining whether a plaintiff presents two separate claims, we have looked to whether or not proof of the same facts will support both actions, or to whether the wrong for which redress is sought is the same in both actions. *Woodbury v. Porter,* 158 F.2d 194, 195 (8th Cir.1946). The Restatement (Second) of Judgments has recently adopted a test through which an identity of claims can be more readily discerned. It looks to whether the claims arise from the same transaction.

> When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar ... the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

Restatement (Second) of Judgments § 24(1) (1982). The term "transaction" connotes a common nucleus of operative facts.

> (2) What factual grouping constitutes a "transaction", and what groupings consti-

tute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Id.* at § 24(2).[5] We believe this is the correct approach. *Cf. Brown v. St. Louis Police Department,* 691 F.2d 393, 398 n. 2 (8th Cir.1982) (applying Missouri law); see *Lee v. City of Peoria,* 685 F.2d 196, 200 (7th Cir.1982); *Nilsen v. City of Moss Point, Miss.,* 674 F.2d 379, 385 (5th Cir.1982); *Robbins v. District Court of Worth County, Iowa, supra,* 592 F.2d at 1017; *but see Tucker v. Arthur Andersen & Co.,* 646 F.2d 721, 727 (2d Cir.1981); *Maher v. City of New Orleans,* 516 F.2d 1051 (5th Cir.1975), *cert. denied,* 426 U.S. 905, 96 S.Ct. 2225, 48 L.Ed.2d 830 (1976).[6]

■ *Poe I* and *II* present the same claim. They emerge from the same transaction and share precisely the same nucleus of operative facts. The thrust of both cases is whether Ms. Poe was wrongfully discharged on April 21, 1977, or whether, as John Deere contends, she was terminated because of

---

**5.** Restatement (Second) of Judgments § 24, comment c (1982), correctly notes the following:

> *Transaction may be single despite different harms, substantive theories, measures or kinds of relief.* A single transaction ordinarily gives rise to but one claim by one person against another. When a person by one act takes a number of chattels belonging to another, the transaction is single, and judgment for the value of some of the goods exhausts the claim and precludes the injured party from maintaining one action for the remainder. In the more complicated case where one act causes a number of harms to, or invades a number of different interests of the same person, there is still but one transaction; a judgment based on the act usually prevents the person from maintaining another action for any of the harms not sued for in the first action.
>
> That a number of different legal theories casting liability on an action may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the

facts, or would call for different measures of liability or different kinds of relief.

The existence of several harms and theories does not necessarily create more than one claim.

**6.** The Supreme Court equates "claim" and "transaction" (as it is defined by the Restatement) in a variety of contexts in which the idea of a claim is legally significant. See *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (pendent jurisdiction exists when the state and federal claims are derived from a common nucleus of operative fact); *American Fire & Cas. Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951) (where there is a single wrong arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under 28 U.S.C. Sec. 1441(c)); *Reeves v. Beardall,* 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478 (1942) (under Fed.R.Civ.P. 54(b) a judgment which terminates the action with respect to one of several claims joined in a complaint is final for purposes of appeal where the several claims arose out of wholly separate and distinct transactions).

excessive and inexcusable absenteeism and because she made an unauthorized use of the company's name. Ms. Poe concedes that both cases involve the same facts and that she would present the same evidence in *Poe II* as she did in *Poe I*. *Poe II* is nothing more than an attempt to apply different legal labels to the facts of *Poe I*. In her brief to the District Court in opposition to defendant's motion for summary judgment (D.R. 126) she says the following: "[T]he fact that the facts and transactions at issue in *Poe I* are also at issue in this suit does not mean that the two suits involve the same cause of action. The weight to be given certain facts, the nature of the wrongs asserted, the inferences to be drawn from certain premises, and the conclusion to be drawn from all the evidence are entirely different." We disagree. A court ruling bars relitigation of actions arising out of the same transaction or factual setting. Her concessions are fatal to her cause.

■ There is no merit to Ms. Poe's argument that the theories she raises in *Poe II* were unavailable to her in *Poe I* because the District Court in *Poe I* denied leave to amend her complaint. Ms. Poe filed suit August 7, 1978. She did not move to amend her complaint until April 27, 1981, the first day of trial. It was well within the District Court's discretion to deny leave under Fed.R.Civ.P. 15(a) because the motion was filed too late. We agree with the Restatement (Second) of Judgments § 25 comment b (1982), that "[i]t is immaterial that the plaintiff in the first action sought to prove the acts relied on in the second action and was not permitted to do so because they were not alleged in the complaint and an application to amend the complaint came too late." Moreover, Ms. Poe could have appealed from the denial of her motion to amend. She did not.

There is equally little merit to Ms. Poe's contention that the prima facie tort and service-letter theories were unavailable prior to April 27, 1981. Missouri's service-letter statute, Mo.Ann.Stat. Sec. 290.140 (Vernon 1965) has been in effect since 1905. It provides: "Whenever any employee ... shall be discharged ... it shall be the duty of the superintendent or manager ... to issue to such employee a letter setting forth the nature and character of service rendered ... and truly stating for what cause, if any, such employee has quit such service." People have been litigating service-letter claims in Missouri at least since a private cause of action to effectuate the statute was recognized in *Cheek v. Prudential Ins. Co.*, 192 S.W. 387, 389–90 (Mo.1916), *appeal dismissed*, 252 U.S. 567, 40 S.Ct. 343, 64 L.Ed. 719 (1920). By the time *Poe I* went to trial the statute's validity had been successfully attacked in *Rimmer v. Colt Industries Operating Corp.*, 495 F.Supp. 1217 (W.D.Mo.1980), *rev'd*, 656 F.2d 323 (8th Cir. 1981),[7] but there was sufficient case law to ground a forceful argument that the statute was valid. *Prudential Ins. Co. v. Cheek*, 259 U.S. 530, 42 S.Ct. 516, 66 L.Ed. 1044 (1922); *Hanch v. KFC National Management Corp.*, 615 S.W.2d 28 (Mo.1981); *State ex rel. Terminal R.R. Ass'n v. Hughes*, 350 Mo. 869, 169 S.W.2d 328 (1943). There was simply no reason why this theory could not have been pursued before April 27. There is likewise no excuse for not raising the prima facie tort theory prior to April 27. A cause of action for prima facie tort had been recognized months earlier in *Porter v. Crawford and Co.*, 611 S.W.2d 265 (Mo.App. 1981). It should have been raised more promptly.[8]

The doctrine of res judicata is a fundamental precept of common-law adjudication. It has the salutary effects of protecting adversaries from the expense and vexa-

---

**7.** This Court reversed the District Court's finding in *Rimmer* that the statute was facially unconstitutional after *Poe I* was tried.

**8.** Even if *Porter* had been decided after *Poe I,* counsel was still free to pioneer the development of a prima facie tort theory. See *Federated Department Stores, Inc. v. Moitie,* 452 U.S.

394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981); *Nilsen v. City of Moss Point, Miss.,* 674 F.2d 379, 386 n. 10 (5th Cir.1982). Somebody has to be the first to argue for a change in the law, and lawyers are often looking for the chance.

tion of multiple lawsuits, conserving the limited time of judges, and fostering reliance on decisions of courts. The doctrine of res judicata is meant to preclude precisely the course of action which plaintiff pursued in *Poe I* and *II.*

## II.

*Costs*

■ In a separate appeal Ms. Poe challenges only the assessment of costs against her following the jury's verdict in *Poe I* that John Deere did not discriminate against her in violation of 42 U.S.C. § 1981. She does not appeal from the merits of the judgment against her in *Poe I.* John Deere argues that an award of costs is not appealable. The rule is that a party cannot appeal a judgment upon the issue of costs unless the power of the trial court to assess costs is at issue. *Wetzel v. Ohio,* 371 U.S. 62, 83 S.Ct. 111, 9 L.Ed.2d 26 (1962) (per curiam) (Douglas, J., concurring); *Newton v. Consolidated Gas Co.,* 265 U.S. 78, 82, 44 S.Ct. 481, 482, 68 L.Ed. 909 (1924). *But see Twentieth Century Fox Film Corp. v. Goldwyn,* 328 F.2d 190, 222 n. 63 (9th Cir.), *cert. denied,* 379 U.S. 880, 85 S.Ct. 147, 13 L.Ed.2d 86 (1964); *Farmer v. Arabian American Oil Co.,* 324 F.2d 359 (2d Cir. 1963), *rev'd on other grounds,* 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964). We do not simply dismiss the appeal, however, because plaintiff attacks not only the amount of costs awarded but the statutory authority of the court to assess costs. She seeks to apply to the assessment of costs the standard for assessing attorney's fees against a losing Title VII or civil-rights plaintiff. She contends that costs cannot be taxed against her unless her suit was unreasonable, frivolous, meritless, or vexatious, *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), and that, to the contrary, her suit did have some merit.

■ We reject plaintiff's attempt to invoke the *Christiansburg* standard. Fed.R. Civ.P. 54(d) provides: "Except when ex-

press provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ." We see no reason to prefer civil-rights plaintiffs over some other class of litigants who have claims based on federal statutes. Congress has preferred civil-rights litigants by providing that courts must ordinarily award attorneys' fees if they prevail, but may tax attorneys' fees against them only if their suit was unreasonable, frivolous, meritless, or vexatious. Congress has not, however, carved out an exception to Rule 54(d) relieving a losing civil-rights litigant of the burden of bearing the costs of litigation. The rationale for this distinction is clear. Whereas the magnitude and unpredictability of attorney's fees would deter parties with meritorious claims from litigation, the costs of suit in the traditional sense are predictable and, compared to the costs of attorneys' fees, small. See *Baez v. United States Department of Justice,* 684 F.2d 999, 1003 (D.C.Cir.1982) (en banc). Just recently the Supreme Court observed that the taxation of costs is a "normal incident of defeat." *Delta Air Lines, Inc. v. August,* 450 U.S. 346, 352, 101 S.Ct. 1146, 1150, 67 L.Ed.2d 287 (1981). Costs, unlike attorney's fees, are awarded to a prevailing party as a matter of course, unless the district court directs otherwise; unusual circumstances need not be present. *NOW v. Bank of California,* 680 F.2d 1291, 1294 (9th Cir. 1982); *Croker v. Boeing Co.,* 662 F.2d 975, 998–99 (3d Cir.1981); *Johnson v. Nordstrom-Larpenteur Agency, Inc.,* 623 F.2d 1279, 1282 (8th Cir.), *cert. denied,* 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980); *Jones v. City of San Antonio,* 568 F.2d 1224, 1226 (5th Cir.1978). It is of course within a court's discretion to deny costs because a plaintiff is poor or for other good reason, but no such suggestion is made here.

■ Ms. Poe also attacks the amount of costs awarded. This issue is within the sound discretion of the district court and

ordinarily is not appealable.[9] A court of appeals lacks jurisdiction to hear an appeal where the sole issue is that the district court abused its discretion as to the amount of costs awarded. Here, however, the appellant has raised an issue of the court's power over costs under the *Christiansburg* standard. Although that doctrine does not apply, we can and do review the merits of the cost judgment. No abuse of discretion is apparent.

Accordingly we affirm.

---

**9.** This Court has in the past ruled on cases where the sole claim on appeal was that the district court had abused its discretion in awarding costs. *Lewis v. St. Louis University,* 635 F.2d 700 (8th Cir.1980) (per curiam); *Mur-* *phy v. L & J Press Corp.,* 577 F.2d 27 (8th Cir.1978). The issue of jurisdiction was not discussed in those opinions, and may not have been raised in the briefs.