UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

No. 96-2310

LANDSCAPE PROPERTIES, INC.,  *
DEBTOR IN POSSESSION          *
                                          *
        Plaintiff                         *
                                          *
C. RICHARD CROCKETT;          *        Appeal from the United
CROCKETT & BROWN, PLLC        *            States District Court for
                                          *        the Eastern District of
        Appellants                        *        Arkansas
    v.                                    *
                                          *
JOE D. WHISENHUNT; ROBERT A.  *
VOGEL; RICHARD C. DOWNING     *
                                          *
    Defendants - Appellees.    *

Submitted:  May 21, 1997

Filed: October 9, 1997

Before BEAM, FRIEDMAN*, and LOKEN, Circuit Judges.

FRIEDMAN, Circuit Judge.

    For the third time, we must resolve a controversy growing out of an unsuccessful attempt under section 363(n) of the Bankruptcy Code, 11 U.S.C. § 363(n), to challenge a bankruptcy sale of the bankrupt's real property.  The two prior appeals involved the merits.

    * DANIEL M. FRIEDMAN, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

The present appeal is from sanctions imposed upon the lawyer for the bankrupt for filing a subsequent frivolous complaint seeking to avoid the sale.  We affirm the sanctions.

I

The background facts, as set forth in our prior opinion, are not disputed.

A.     In September 1988, Ramsay, the trustee in bankruptcy, contracted to sell real property of the bankrupt Landscape Properties, Inc. ("Landscape"), in a private sale, to Robert A. Vogel for $1,200,000.00.  Another bidder, Richard Downing (representing Joe D. Whisenhunt) ("Downing"), offered $1,225,000.00, but he withdrew that offer before the bankruptcy court held a hearing on the sale to Vogel.  Since Vogel's offer was the only bid for the property, and all objections to the sale had been withdrawn, the bankruptcy court approved the sale.  Vogel and Landscape closed the sale in early 1989.  Shortly thereafter, Vogel conveyed the property to Downing, to whom he had assigned his rights under the contract.  Landscape Properties, Inc. v. Vogel, 46 F.3d 1416, 1419 (8th Cir.), cert. denied, 116 S. Ct. 86 (1995).

After the closing, the trustee discovered there was an agreement between Vogel and Downing, under which Vogel agreed to assign to Downing his rights in the purchase contract. If Downing chose to exercise the option, the agreement required him to pay Vogel $350,000.00.  If not, Vogel would pay Downing the same amount.  Vogel conditioned the assignment of the contract on Downing's withdrawal of his $1,225,000.00 offer, and the bankruptcy court's approval of the sale from Landscape to Vogel.  Id.

The trustee then filed suit for damages against Vogel, Downing, Whisenhunt, ("the defendants") and Martin (another party who withdrew his objection to the Vogel sale) alleging that they "were parties to a collusive agreement to control the sale price of bankruptcy estate property" in violation of 11 U.S.C. § 363(n).  Ramsay v. Vogel, 970 F.2d 471, 473 (8th Cir. 1992).  The United States District Court for the Eastern District of Arkansas (to which the case was removed because the defendants sought a jury trial)

2

dismissed the complaint for failure to state a claim upon which relief could be granted, holding that section 363(n) covers only auctions and not private sales. On appeal, this court reversed, holding that section 363(n) "cover[s] all persons who are contemplating making an offer to purchase property of a bankrupt estate . . . whether such sale be private or at public auction." Id.

The trustee also argued that the district court erroneously had dismissed common law claims of conspiracy and fraud, which the trustee maintained his complaint included. This court held that "[f]airly read, the complaint did not allege common law claims or [sic] conspiracy or fraud." Id. at 475. The court stated that on remand "the trustee may, of course, move to amend his complaint as he deems appropriate, including the addition of common law claims. The decision whether to permit such amendment lies primarily within the district court's discretion." Id. at 475-76.

Following our remand, Ramsey moved to file an amended and substituted complaint seeking "Avoidance of the Sale" and damages. The complaint also alleged fraud on the bankruptcy court. The district court denied leave to file the amended complaint because the remedies in section 363(n) are alternative, the plaintiff chose to seek damages rather than avoidance of the sale, and the defendants would be prejudiced if the complaint were thus amended. Landscape, 46 F.3d at 1420. (Landscape I).

After trial, the jury held for the defendants. The trustee appealed, and this court affirmed. Id. at 1419. We upheld the denial of leave to amend because the jury verdict rendered the issue moot. We also rejected the numerous challenges to the jury verdict.

We further pointed out that two "fallacious contentions underlie Landscape's argument," one of which was that "this case involves fraud on the bankruptcy court," namely, "failure to disclose to the court . . . the November 3, 1988 agreement under which Vogel assigned his interest in the contract to Downing for $350,000 and the latter agreed

3

to withdraw his $1,225,000 offer." Id. at 1421.  We explained: "[t]he original complaint did not allege fraud on the court.  Although paragraph 38 of the proposed amended and substituted complaint did so allege, the district court denied leave to file that complaint--a ruling we do not disturb . . . and that allegation therefore is not part of this case." Id. at 1422.   We stated: "`A finding of fraud on the court is justified only by the most egregious misconduct . . . .'  Landscape's claim of fraud on the court does not even come close to meeting that standard." Id. (quoting Pfizer Inc. v. International Rectifier Corp. (In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions), 538 F.2d 180, 195 (8th Cir. 1976), cert. denied, 429 U.S. 1040 (1977) (citations omitted)).

B.      The appellant Crockett, as attorney for Landscape, then filed a new complaint alleging fraud on the bankruptcy court based on a letter of which he allegedly learned after the district court had denied motion for leave to amend.  The letter, from Downing to Vogel, dated November 14, 1988 ("the November 14, 1988 letter"), described the assignment of Vogel's rights under the purchase agreement to Downing and stated that "we think it is unwise to advise Mr. Ramsay, or any of the other parties, regarding the assignment.  Though we believe there is nothing controversial, we certainly believe that the action would be prudent."  Crockett asserted that this "new" evidence entitled him to file a new suit and that the issue of fraud had not previously been litigated. Landscape sought a declaratory judgment that the bankruptcy court's order approving the sale of the property was void, and additional damages. Landscape Properties, Inc. v. Whisenhunt, No. LR-C-95-365 (E.D. Ark March 14, 1996) ("Landscape II").

        The defendants moved to dismiss Crockett's complaint as barred by res judicata and collateral estoppel.  They also moved for  monetary and disciplinary sanctions against Crockett for violating Federal Rule of Civil Procedure 11, because "[t]he claims and other legal contentions of the Plaintiffs and Counsel are not warranted by existing law and are frivolous arguments for the extension of existing law."

The district court** dismissed the complaint because

> Landscape II is barred by the general principles of res judicata as stated in the Eighth Circuit. Clearly, any claim sought to be presented by plaintiff arose from the same factual predicate as that alleged in Landscape I. . . . The issue of fraud on the court was decided in the prior litigation, there was a final judgment on the merits, the estopped party was a party in the prior adjudication, and the estopped party had a full and fair opportunity to be heard on the adjudicated issue.

Landscape II, slip op. at 10.

The court also sanctioned Crockett for filing a frivolous complaint. The court pointed out that in Poe v. John Deere Co., 695 F.2d 1103 (8th Cir. 1982), this court held that allegations in a complaint, leave to file which had been denied, are res judicata and that under Poe the denial of leave to file the amended complaint in Landscape I, alleging fraud on the bankruptcy court, was res judicata on that issue. The court noted that although Crockett contended that Poe should be overruled and in any event was distinguishable, Crockett "testified that he did not have any authority to support his argument that Poe should be overruled." Landscape II, slip op. at 12. After mentioning numerous actions taken by Crockett, including the initiation of state attorney disciplinary proceedings against Downing and Davidson (Vogel's attorney), the court concluded that "Mr. Crockett's actions are vindictive and not for a proper purpose." Id. at 13.

The court awarded against Crockett, in favor of the defendants, the attorney fees and costs they incurred in defending the second suit and seeking sanctions as follows: $18,542.40 to Whisenhunt; $16,210.26 to Vogel and $1,414.55 to Downing, for a total of $36,167.21. The court also fined Crockett $5,000.00 and referred the case to the other district judges "of this district to determine whether any disciplinary actions should be taken

---

**The Honorable Stephen M. Reasoner, United States District Judge for the Eastern District of Arkansas.

5

against Mr. Crockett" -- a proceeding from which the district judge recused himself. Id. at 14.

II

Federal Rule of Civil Procedure 11 states in relevant part:

> **(b) Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, --
>
> **(1)** it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> **(2)** the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> . . . .
>
> **(c) Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to [certain] conditions . . . impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

"[A]n appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination. A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990).

A.      In the complaint Crockett filed in Landscape II, he alleged that the defendants had committed fraud on the bankruptcy court by failing to disclose to that court, prior to the court's approval of the sale of the debtor's realty, the agreement under which Downey would pay Vogel $350,000 in return for Downey's withdrawal of his higher bid for the property.  That is basically the same claim that Landscape sought to assert when it unsuccessfully attempted to amend its complaint in Landscape I.  Under the settled law of this circuit, the district court's refusal to permit such amendment was res judicata on the claim of fraud on the bankruptcy court that the amended complaint sought to assert. Crockett has presented no valid reason for seeking to relitigate that claim in Landscape II.

"Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action."  Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979);  Nevada v. United States, 463 U.S. 110, 130 (1983) ("The final `judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever.'" (quoting Commissioner v. Sunnen, 333 U.S. 591, 597 (1948))).  Whether the district court correctly determined that res judicata barred this action (Landscape II) therefore depends on whether the complaint presented the same "cause of action" as Landscape I.

In Ruple v. City of Vermillion, S.D., 714 F.2d 860, 861 (8th Cir. 1983), cert.  denied, 465 U.S. 1029 (1984) this court stated:

> [T]he phrase "cause of action" or "claim," the term now favored by most courts, has been given a more practical construction.  It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same "claim" or "cause of action" for purposes of res judicata.

The claim of fraud on the bankruptcy court in the Landscape II complaint arose out

7

of the same nucleus of operative fact as the similar claim in the amended complaint in Landscape I. The gravamen of both complaints was the alleged concealment from the bankruptcy court of the Downey-Vogel agreement. Crockett relies on the November 14, 1988 letter from Downey to Vogel recommending against advising Ramsey or the other parties about the assignment of Vogel's rights under the agreement as new evidence not previously before the court. He admitted, however, that the letter had been introduced into evidence in Landscape I. In any event, this single additional item of evidence, at most of cumulative significance, would not undermine the conclusion that on the basic issue of fraud on the bankruptcy court, both complaints arose out of "the same nucleus of operative fact" and were "based upon the same factual predicate." Ruple, 714 F.2d at 861.

The next issue is whether the denial of the motion to amend the complaint in Landscape I constitutes a final "judgment on the merits" barring the complaint in Landscape II. Poe and King v. Hoover Group, Inc., 958 F.2d 219 (8th Cir. 1992), are dispositive on this point against Crockett.

In Poe, Ms. Poe filed suit alleging discrimination in violation of 42 U.S.C. §2000e-5 ("Title VII") and 42 U.S.C. § 1981. The district court granted summary judgment against Poe on the Title VII claim but allowed the section 1981 claim to be tried. Prior to trial, Ms. Poe sought to amend her complaint to include claims of prima facie tort, invasion of privacy and other tort theories of recovery. The court denied amendment, and the jury ruled against Ms. Poe on her section 1981 claim. Ms. Poe then filed another suit, against the same defendant, seeking the same relief and raising the same theories that she included in her amended complaint. The district court granted summary judgment for the defendant on res judicata grounds, and this court affirmed. It explained that Ms. Poe's "contention that Poe II raises theories of recovery not presented in Poe I does not enable her to escape the effects of res judicata." Poe, 695 F.2d at 1105. The court noted that Poe I and Poe II arose out of the same nucleus of operative fact, and therefore that "[t]here is no merit to Ms. Poe's argument that the theories she raises in Poe II were unavailable to her

8

in <u>Poe I</u> because the District Court in <u>Poe I</u> denied leave to amend her complaint." <u>Id.</u> at 1107.

In case <u>Poe</u> left any doubt, in <u>King v. Hoover Group, Inc.</u> this court stated in clear, unequivocal language: "It is well settled that denial of leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading." <u>King</u>, 958 F.2d at 222-23. In view of the settled law of res judicata in this circuit, the district court did not abuse its discretion in determining that Crockett's complaint was not "warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal [thereof]."

B.      Crockett argues that the district court erred in considering his filing of an ethics complaint against Downing and Davidson (Vogel's attorney) in its Rule 11 analysis. Rule 8.3 of the Arkansas Rules of Professional Conduct requires that "[a] lawyer having knowledge that another lawyer has committed a violation of the rules . . . that raises a . . . question as to that lawyer's honesty . . . shall inform the appropriate professional authority." Crockett argues that in filing his ethics complaint, he was complying with that requirement.

The district court referred to that action by Crockett in explaining why, although it "once thought that Mr. Crockett's action in filing this lawsuit was an exercise of poor judgment, the Court is now convinced that the action was the pursuit of a personal vendetta." <u>Landscape II</u>, slip op. at 12 (footnote omitted). After describing various actions of Crockett that so indicated, the court stated that Crockett's "actions in initiating disciplinary proceedings against Mr. Downing and Mr. Davidson before the Arkansas Supreme Court Committee on Ethics supports this Court's conclusion that Mr. Crockett's actions are vindictive and not for a proper purpose." <u>Id.</u> at 13. The court noted that Crockett admitted that "he was aware of the perceived ethics violation in 1993 but waited until December of 1995 to file those charges"; and that "in preparing the affidavit of ethics

9

violations he did not inform the ethics committee of the jury verdict in this case, this Court's proceedings and rulings or the rulings of the Eighth Circuit. Of particular significance, is Mr. Crockett's failure to inform the committee of this Court's ruling in the August 18, 1995 hearing on the motions to dismiss," at which "the court stated that there was an absolute lack of facts to support the claim of fraud on the court [and] indicated . . . that an order of dismissal would be entered as soon as the United States Supreme Court ruled on the [pending] motion for certiorari." Id. at 13-14.

Credibility questions are peculiarly within the discretion of the district court. United States v. McCarthy, 97 F.3d 1562, 1579 (8th Cir. 1996) ("Credibility determinations are within the exclusive domain of the district court, and `are virtually unreviewable on appeal.'" (quoting United States v. Pugh, 25 F.3d 669, 677 (8th Cir. 1994) (citation omitted)), cert. denied, 117 S. Ct. 1011 (1997). The district court (the same judge who had presided over all of these cases) did not abuse its discretion in rejecting Crockett's explanation for his filing of the ethics complaint and instead concluding that it reflected a personal vendetta.

In sum, in the language of Rule 11, the record established that Crockett "to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," could not have believed that his amended complaint was brought for a proper purpose or was warranted by existing law.

III

Crockett contends that the amount and type of sanctions were improper and that in imposing them, the district court abused its discretion.

Rule 11 requires that the amount of the sanctions "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly

situated."  Subject to certain limitations,

> the sanction may . . . include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

A.      Crockett argues that the total attorney fees awarded of $36,167.21 was excessive in view of the defendant's claim that the complaint was barred by res judicata.  According to Crockett, the defense lawyers expended excessive time in preparing a defense against what they and the district court characterized as a frivolous lawsuit, and preparing the motion for sanctions.  He contends that the district court's approval of these fees is inconsistent with Kirk Capital Corp. v. Bailey, 16 F.3d 1485, 1491 (8th Cir. 1994), where in reducing the amount of attorney fees awarded as a sanction under Rule 11, this court stated that "there is something very inconsistent with the assertion that the plaintiffs filed a patently frivolous complaint meriting sanctions under Rule 11 and contending that it took 279.10 or even 179.10 hours of legal work in order to reveal what defendants contend is obvious." Id.  The court in Kirk Capital, however, also recognized that "courts have broad discretion in determining an appropriate sanction."  Id. at 1490.

Of course, "[c]ompensatory sanctions under Rule 11 must be reasonable in amount." Silva v. Witschen, 19 F.3d 725, 731 (1st Cir. 1994) (footnote omitted).  Crockett's complaint in Landscape II named eight defendants, and they retained three sets of attorneys.  Although the complaint was ultimately held to be frivolous, it raised subtle issues requiring research into questions of collateral estoppel, res judicata, and splitting causes of action.  At that stage of the litigation, the attorneys could not know how the district court would view the case or their contentions, and they therefore reasonably determined that careful and thorough preparation was necessary.  A substantial portion of the attorneys' time was expended in preparing answers to Crockett's interrogatories --

11

time that Crockett cannot now complain about. See Brandt v. Schal Assoc., Inc., 960 F.2d 640, 648 (7th Cir. 1992) ("We have little sympathy for the litigant who fires a big gun, and when the adversary returns fire, complains because he was only firing blanks.").

The district judge who, as noted, was fully familiar with the entire history of the litigation, concluded that "as far as the amount and as far as the legal work done, those look like reasonable amounts of time and reasonable amounts of attorneys fees, the normal sort of expenses." We cannot say the district court abused its discretion in so concluding.

B.      Crockett contends that the district court did not satisfy the requirement in Rule 11(c)(2) that the sanction be no greater than "is sufficient to deter repetition of such conduct." Although it would have been better if the district court had discussed this issue, the total context of the court's ruling indicates that the court believed that the sanctions it imposed were necessary to deter repetition of Crockett's filing a frivolous complaint. Crockett previously had been sanctioned by a state court for similar misconduct, and the district court concluded that a relatively severe sanction -- reimbursement of the defendants' attorney fees and a $5,000 fine -- was necessary to deter repetition of Crockett's misconduct.

C.      Crockett also contends that the sanctions were improper because the district court did not consider his ability to pay them. Nothing in the record indicates, or even suggests, however, that Crockett is unable to pay the amounts. If that were the situation, it was Crockett's obligation to raise that point before the district court, since he was the one who had that information. See White v. General Motors Corp., 908 F.2d 675, 685 (10th Cir. 1990) ("Inability to pay what the court would otherwise regard as an appropriate sanction should be treated as reasonably akin to an affirmative defense, with the burden upon the parties being sanctioned to come forward with evidence of their financial status."), cert. denied, 498 U.S. 1069 (1991).

D.      Finally, Crockett asserts, but does not argue, that the district judge improperly referred this matter to the other district judges in the Eastern District of Arkansas "to determine whether any disciplinary actions should be taken against Mr. Crockett." That referral, of course, indicates how serious the district court believed Crockett's violation of Rule 11 to have been. The referral was not itself a sanction. Even if we properly may review such an order of reference -- on which we intimate no view -- the proper occasion to do so would be in an appeal from any further disciplinary action those judges might take against Crockett. At this time, however, that issue is wholly conjectural and academic.

CONCLUSION

The order of the district court imposing sanctions on Crockett is affirmed.

A true copy.

ATTEST:

      CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

13