**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**SAFEGUARD CHEMICAL CORPORATION, Defendant.**

**No. 99 CIV 12411 (SAS).**

United States District Court, S.D. New York.

April 18, 2001.

Louis Graziano, Equal Employment Opportunity Commission, New York District Office, New York City, for Plaintiff.

Jeffrey C. Slade, Slade & Associates, P.C., New York City, for Defendant.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Defendant Safeguard Chemical Corporation ("Safeguard"), the prevailing party in this action, moves for attorneys' fees, costs and expenses pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 28 U.S.C. § 1920, Federal Rule of Civil Pro-

cedure ("Rule") 54(d) and Local Civil Rule 54.1. In particular, Safeguard asserts that plaintiff Equal Employment Opportunity Commission ("EEOC") brought suit frivolously, unreasonably and without foundation. For the reasons set forth below, Safeguard's motion for attorneys' fees is denied, but its motion to recover costs is granted.

## I. BACKGROUND

On December 28, 1999, the EEOC brought a lawsuit against Safeguard, a New York corporation, on behalf of complainants Jamilet Colon, Madeline Rios and Angel Lopez ("complainants") under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 for alleged "unlawful discrimination on the basis of national origin discrimination and retaliation" that occurred in 1993–94. *See* Complaint ("Compl.") ¶¶ 8–11. In particular, the EEOC alleged that "Safeguard [had] engaged in unlawful employment practices at its Bronx, New York facility in violation of section 703(a) of Title VII, 42 U.S.C. § 2000e–2(a)." [1] Compl. ¶ 7. Some of the discriminatory acts alleged by the EEOC included management's repeated use of the word "spic" in describing Hispanic employees and calling Colon a "Spic Aunt Jemima." *See* Compl. ¶ 7(1)-(3).

The EEOC further alleged that Safeguard violated section 704(a) of Title VII, 42 U.S.C. § 2000e–3(a), by discharging the complainants in retaliation for "engaging in the protected activity of protesting the national origin harassment." Compl. ¶¶ 8–10.

Prior to filing suit, the complainants filed charges with the New York State Division of Human Rights ("NYSDHR") in accordance with section 706(c) of Title VII, 42 U.S.C. § 2000e–5(c). [2] *See* 1/5/01 Notice of Motion for Attorneys' Fees, Expenses & Taxable Costs ("Def.Motion") ¶¶ 3–4. Upon review, the NYSDHR found "probable cause to believe that there was evidence that Safeguard had engaged in unlawful discrimination" against Colon based on New York's human rights laws. *Id.* ¶ 5. However, the NYSDHR did not find similar probable cause as to Rios or Lopez. [3] *See id.* ¶¶ 6, 7.

After the NYSDHR made its conclusions, Lopez began gathering additional information and statements to support his allegation that Safeguard engaged in national origin discrimination. *See id.* ¶ 8. This newly gathered information contained many allegations of racial and ethnic slurs, including many that were previously undisclosed by Rios and Colon. *See* Statements

---

**1.** Section 703(a) states that

It shall be an unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or *national origin;* or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or *national origin.*

42 U.S.C. § 2000e–2(a) (emphasis added).

**2.** Title VII requires that if the action occurs in a state that has already enacted a law prohibiting the alleged discrimination, the EEOC must wait until the state proceedings have ended or at least sixty days after the appropriate state remedy has been invoked before bringing an action. *See* 42 U.S.C. § 2000e–5(c); *see also Kremer v. Chemical Constr. Co.,* 456 U.S. 461, 469, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

**3.** Of the three claims submitted to the NYSDHR, only the statement given by Lopez contained racial or ethnic slurs. *See* Statements by Colon, Rios and Lopez to the NYSDHR, Ex. A to Def. Motion, at 9.

by Safeguard Employees and Former Employees, Ex. F. to Def. Motion, at 0–6. This information was presented to the EEOC in November 1997. *See id.; see also* Def. Motion ¶ 10. Upon receiving the newly gathered information, the EEOC began an investigation to make its own determinations of whether Safeguard had engaged in national origin discrimination. *See* Def. Motion ¶ 10.

The EEOC first requested certain documents from Safeguard to better assess the complaints against it. *See id.* Safeguard did not respond. *See id.* ¶ 12. The EEOC then issued a subpoena on April 9, 1998, requiring Safeguard to produce the requested documents by April 20, 1998. *See id.* Although Safeguard received the subpoena on April 13, 1998, it did not reply in a timely manner. *See id.* ¶¶ 12, 13. The EEOC then filed an order to show cause why the subpoena should not be enforced. *See id.* On June 10, 1998, Sang K. Lee, Safeguard's then-recently hired controller, wrote to Elizabeth Grossman, a trial attorney for the EEOC. *See* Safeguard 1998 Letter in Regard to EEOC Charge, Ex. I to Def. Motion, ¶ 1. Lee explained that administrative confusion, caused by a void at the controller position for over a year, had prevented Safeguard from complying with the initial document request and the subsequent subpoena. *See id.* On June 23, 1998, with Lee's consent, the order to enforce the subpoena was granted and the documents were produced. *See* Def. Motion ¶ 16.

Nearly six months later, on December 22, 1998, the EEOC notified Safeguard, via a letter addressed to Lee, that the documents it provided were deficient and that it was seeking additional documents. *See* EEOC Letter in Response to Document Production, Ex. L. to Def. Motion, at 2–3. However, Lee was no longer employed at Safeguard and the position of controller

was now held by William Rossa. *See* Def. Motion ¶ 18. Rossa complied with this additional request on January 12, 1999. *See id.* There was no further correspondence between the EEOC and Safeguard until September 17, 1999, when the EEOC determined that Safeguard had discriminated against Colon, Rios and Lopez on the basis of their national origin. *See* EEOC Determinations, Ex. O to Def. Motion, at 1, 3, 5.

On September 20, 1999, the EEOC informed Safeguard that it was prepared to conciliate and offered a proposal to remedy the discriminatory practices. *See* EEOC Conciliation Letter, Ex. P to Def. Motion, at 1, 3, 5. The EEOC, in turn, asked Safeguard for a response to its proposal by September 28, 1999. *See id.* at 2, 4, 6. Safeguard did not respond to the EEOC's conciliation effort. *See* Def. Motion ¶ 20(c). Without any further communication, the EEOC informed Safeguard on September 30, 1999 that

> The EEOC has determined that efforts to conciliate this charge as required by Title VII, as amended, have been unsuccessful. This letter constitutes the notice required by § 1601.25 of the Commission's Procedural Regulations which provides that the Commission shall notify a respondent in writing when it determines that further conciliation would be futile or non-productive. No further effort to conciliate this case will be made.

EEOC Conciliation Determination Letter, Ex. Q to Def. Motion, at 1.

On December 20, 1999, the EEOC commenced a Title VII action against Safeguard alleging national origin discrimination and unlawful retaliatory actions in firing the complainants for protesting the alleged discrimination. *See* Compl. at 1. After attempts at mediation failed, a jury trial commenced on November 28, 2000.[4]

---

4. Some time between the mediation and the    start of trial, Rios was dismissed from this

After a four-day trial, the jury found in favor of Safeguard. *See* Def. Motion ¶ 24.

Safeguard has since filed this motion for attorneys' fees[5] and costs[6] pursuant to section 706(k) of Title VII (42 U.S.C. § 2000e–5(k)), 28 U.S.C. § 1920, Rule 54(d) and Local Civil Rule 54.1. *See* Def. Motion at 1. Safeguard alleges that the EEOC's decision to sue was frivolous, unreasonable, and without foundation, and it should therefore be awarded fees and costs. *See* 01/29/01 Memorandum of Law in Support of Defendant Safeguard's Motion for Attorneys' Fees, Expenses and Taxable Costs ("Def.Mem.") at 3.

## II. DISCUSSION

### A. Legal Standards

#### 1. Attorneys' Fees

■ Generally, litigants must pay their own attorneys' fees. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 415, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). At times, however, Congress has authorized district courts to use their discretion in awarding attorneys' fees to prevailing litigants. *See id.* Section 706(k) of Title VII is one such statute. It provides:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e–5(k). In interpreting this statute, the Supreme Court has stated that a prevailing defendant seeking to recover attorneys' fees has a higher burden

than does a prevailing plaintiff. *See Christiansburg*, 434 U.S. at 418–19, 98 S.Ct. 694.

Courts routinely award attorneys' fees to prevailing Title VII plaintiffs. In *Christiansburg*, the Court expounded "two strong equitable considerations" for this policy. *Id.* at 418, 98 S.Ct. 694. First, "the plaintiff is the chosen instrument of Congress to vindicate 'a policy that Congress considered of the highest priority.'" *Id.* (quoting *Newman v. Piggie Park Enter.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968)). "Second, when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law." *Christiansburg*, 434 U.S. at 418, 98 S.Ct. 694.

■ These considerations are "wholly absent" when a prevailing defendant seeks attorneys' fees. *See id.* "In order to avoid chilling the initiation and prosecution of meritorious civil rights actions, fees are not to be awarded to a prevailing defendant unless the plaintiff's action was 'frivolous, unreasonable, or groundless ....'" *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 765, 770 (2d Cir.1998) (quoting *Christiansburg*, 434 U.S. at 422, 98 S.Ct. 694). In applying the "frivolous, unreasonable, or groundless" standard in awarding a defendant attorneys' fees, "it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421–22, 98 S.Ct. 694. "'Generally ... where evidence is introduced that, if credited, would suffice to support a judgment' in favor of the plaintiff, a fee award to the defendant

---

lawsuit, leaving only the claims against Colon and Lopez.

5. The attorneys' fees total $63,022.50. *See* Def. Motion ¶ 26.

6. The costs and expenses amount to $2,669.79 and include 1) $1,937.20 for six depositions; and, 2) $732.59 for the transportation costs of a defense witness. *See* Def. Motion ¶ 30.

is 'unjustified.' " *LeBlanc–Sternberg*, 143 F.3d at 770 (quoting *American Fed'n of State, County and Mun. Employees, AFL–CIO ("AFSCME") v. County of Nassau*, 96 F.3d 644, 652 (2d Cir.1996)).

## 2. Costs

Rule 54(d)(1) states that "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs ...." Fed.R.Civ.P. 54(d)(1). Furthermore, "[a] judge or clerk of any court of the United States may tax as costs the following: ... (2) Fees of the court reporter for all or any party of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses ...." 28 U.S.C. § 1920.

■■■ Assuming that the prevailing party has moved in a timely manner,[7] a court usually "grants costs to a prevailing party as a matter of course in the absence of countervailing statute or rule, unless the trial judge directs otherwise." *Cosgrove v. Sears, Roebuck, & Co.*, 191 F.3d 98, 101 (2d Cir.1999). Unlike attorneys' fees, a court uses the same standard in awarding costs to either a prevailing plaintiff or a prevailing defendant. In *Poe v. John Deere Co.*, 695 F.2d 1103, 1108 (8th Cir. 1982), the court reasoned: "Whereas the magnitude and unpredictability of attorney's fees would deter parties with meritorious claims from litigation, the costs of the suit in the traditional sense are predictable and, compared to the costs of attorneys' fees, small." The Second Circuit follows this reasoning and routinely awards costs to the prevailing party, be it plaintiff or defendant, in Title VII actions. *See, e.g., Cosgrove*, 191 F.3d at 101–02 (quoting *Poe*, 695 F.2d at 1108).

## B. Safeguard's Claim for Attorneys' Fees

■■■ Safeguard claims it is entitled to attorneys' fees because the EEOC was "vexatious" and brought this action "in subjective bad faith." *See* 01/29/01 Reply Memorandum of Law in Support of Defendant Safeguard's Motion for Attorneys' Fees, Expenses and Taxable Costs ("Def.Reply") at 4. Safeguard claims that the EEOC brought this action to teach it a lesson about responding to EEOC subpoenas. *See* Def. Mem. at 1. Additionally, Safeguard alleges that the EEOC used perjurious statements in its case in chief[8] and that "no reasonable person who had objectively studied the actual merits of this case would have brought it to Court." *Id.* at 3. Safeguard further states that the NYSDHR findings, the unsuccessful mediation, the expediency of the jury deliberations and the verdict are proof of its allegation that the claim was brought vexatiously and in bad faith. *See id.* at 10.

Though it may believe that the suit was brought for vindictive purposes, Safeguard offers no objective proof to substantiate this allegation. The following synopsis shows that the EEOC was acting without any vexatious intent. First, the EEOC requested documents in order to determine whether the allegations against Safeguard had merit. *See* Def. Motion ¶ 10. After some difficulty obtaining the documents, the EEOC made its findings of

---

7. Safeguard was granted an extension of time in which to file its motion for fees, expenses and costs. *See* 02/13/01 Endorsed Copy of Notice of Motion for Leave to File Motion for Attorneys' Fees, Expenses & Taxable Costs Out of Time.

8. Safeguard alleges that Lopez's statements to the EEOC were perjurious because the ethnic slurs contained therein were not alleged in the earlier NYSDHR claim and were fabricated to induce the EEOC to bring this action. *See* Def. Mem. at 3.

discrimination after carefully reviewing the documents.[9] *See id.* ¶ 20(a). Upon making these findings, the EEOC attempted a conciliation with Safeguard. *See id.* ¶ 20(b). The EEOC brought suit as a last resort. The EEOC used appropriate measures in its investigation, in making its determinations and ultimately in bringing suit. *See EEOC v. Bruno's Restaurant,* 13 F.3d 285, 288–89 (9th Cir.1993) (EEOC must conduct an investigation, make a reasonable cause determination and attempt conciliation).

■ Safeguard next points to the NYSDHR findings to strengthen its position that this lawsuit was brought vexatiously. Though the EEOC is required to give substantial weight to state agency findings, it is not bound to follow these findings. *See Kremer,* 456 U.S. at 469–70, 102 S.Ct. 1883. Here, after its investigation and review of all the materials before it, the EEOC determined that Safeguard acted in a discriminatory manner against all three claimants, not just against Colon, as the NYSDHR had determined. *See* EEOC Determination Letters, Ex. Q to Def. Motion, at 1. Based on its determinations, the EEOC proceeded to bring an action on behalf of all claimants.

Safeguard points to the speed of the jury deliberations, approximately one-and-a-half hours, as further support for its position that this action was frivolous. *See* Def. Motion ¶ 24. In *AFSCME,* the Second Circuit stated:

> In determining whether a valid claim has been established, the assessment of evidence and testimony is of course within the province of the trier of fact. But a claim is not necessarily frivolous because a witness is disbelieved or an item of evidence is discounted, disproved or disregarded at trial.

*AFSCME,* 96 F.3d at 652. Had the jury credited the EEOC's evidence, then the EEOC would have prevailed. Because the jury did not credit the EEOC's witnesses, its deliberations were swift.

The Supreme Court has warned against this type of *post hoc* analysis in Title VII claims. *See Christiansburg,* 434 U.S. at 421–22, 98 S.Ct. 694. The mere fact that the EEOC did not prevail does not necessarily permit a defendant to recover attorneys' fees. *See id.* Hindsight is disfavored when a clear decision favoring one party can only be rendered after deliberations have concluded. *See id.* ("[I]t is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.").

Finally, Safeguard sets forth its poor financial situation and prays for the instant relief so that the detrimental economic effect of this lawsuit is minimized. *See* Def. Mem at 11 (stating that the company lost $301,762 and $759,049 in fiscal years 1999 and 2000 respectively). Though "the fact [is] that many defendants in Title VII claims are small- and moderate-size employers for whom the expense of defending even a frivolous claim may become a strong disincentive to the exercise of their legal rights," a prevailing defendant does not necessarily receive attorneys' fees. *Christiansburg,* 434 U.S. at 422 n. 20, 98 S.Ct. 694. Because this action is not frivolous, unreasonable or without foundation, an award of attorneys' fees would be inappropriate. *Cf. EEOC v. Bellemar Parts*

---

9. Safeguard believes that the EEOC should have been more discerning in viewing the claimants' statements. *See* Def. Motion at 14.

However, there is no proof that the EEOC acted in bad faith.

*Indus.*, 868 F.2d 199, 200 (6th Cir.1989) (attorneys' fees and costs were awarded when the EEOC filed a groundless action against a company that it knew was unincorporated when the alleged discriminatory action occurred).

### C. Safeguard's Motion for Costs and Expenses

■■■ Safeguard has also moved to recover its costs which total $2,669.79. Costs are routinely awarded to the prevailing party in Title VII actions regardless of whether it is the plaintiff or defendant. *See Cosgrove*, 191 F.3d at 101–02. Safeguard seeks recovery of the costs it incurred in bringing a witness to the trial and purchasing deposition transcripts. *See* Def. Motion ¶ 30. The costs prayed for fall within the bounds of 28 U.S.C. § 1920. *See* 28 U.S.C. § 1920(2), (3). Accordingly, because the EEOC has offered no reason why Safeguard should not be awarded costs, including a countervailing rule or statute, the entire amount of Safeguard's costs are awarded pursuant to Rule 54(d).

### III. Conclusion

For the reasons set forth above, Safeguard's motion for attorneys' fees is denied, but its motion for $2,669.79 in costs is granted. The Clerk of the Court is directed to close this motion.

SO ORDERED: